OPINION
{¶ 1} Appellant, Isaiah D. Sanders, Jr. ("Sanders"), appeals the judgment entered by the Lake County Court of Common Pleas. The following facts are relevant to a determination of this appeal.
 {¶ 2} Sanders was a temporary employee at Kottler Metal, working the second shift from 4:30 p.m. to 12:30 a.m. On May 13, 2006, Lieutenant Randy Sevel of the Willoughby Police Department observed a van leaving Kottler Metal at approximately *Page 2 
1:10 a.m. Since no other vehicles were leaving the parking lot of Kottler Metal and the business was closed, Lieutenant Sevel looked for registration on the vehicle. Lieutenant Sevel did not initially observe the vehicle's registration. As Lieutenant Sevel began to follow the vehicle, he noticed the vehicle's temporary tag was un-illuminated in the rear window. This constitutes a traffic violation. Lieutenant Sevel then ran the vehicle's registration. In order to determine if the description of the driver matched that of the vehicle owner, a female, Lieutenant Sevel pulled to the left side of the vehicle; the driver of the vehicle did not match the description of the vehicle owner. At that point, Lieutenant Sevel effectuated a traffic stop. When he turned on his lights and sirens, the vehicle failed to stop. The vehicle accelerated and Lieutenant Sevel continued pursuit. During pursuit of the vehicle, Lieutenant Sevel notified dispatch. Consequently, Officer Joe Putney of the Willoughby Police Department joined pursuit of the vehicle. As the pursuit ensued, the vehicle ran a red light, improperly changed lanes, and reached speeds of more than 90 miles per hour.
 {¶ 3} As the vehicle continued, the officers from the Willoughby Police Department were joined by officers from Eastlake, Wickliffe, and Euclid. Eventually, the vehicle pulled into a driveway. The driver of the vehicle, later identified as Sanders, was arrested. A search of his vehicle revealed numerous pieces of metal tubing, partially covered by a blanket, in the rear of his vehicle.
 {¶ 4} Sanders told the police officers he was employed at Kottler Metal. The Willoughby Police Department contacted Mr. Barry Feldman, the president of Kottler Metal, and requested he come to the police station. At the station, Mr. Feldman *Page 3 
identified the surplus aluminum material found in Sanders' vehicle to be from Kottler Metal.
 {¶ 5} Sanders was charged with failure to comply with an order or signal of a police officer, a felony of the third degree, in violation of R.C. 2921.331(B) and petty theft, a misdemeanor of the first degree, in violation of R.C. 2913.02(A)(1). Sanders entered a not guilty plea, and the case was heard by a jury. The jury found Sanders guilty on both counts. On March 14, 2007, Sanders was sentenced to 90 days in jail, with a credit of 30 days for time served, and up to three years of community control.
 {¶ 6} Sanders' first assignment of error states:
 {¶ 7} "The trial court erred and abused its discretion by failing to grant the appellant's request for new trial counsel."
 {¶ 8} Sanders cites numerous reasons as to why the trial court's denial of new counsel was an abuse of discretion. For instance, Sanders states he was beaten by the police upon stopping his vehicle; his witnesses were never subpoenaed; his trial counsel did not call him to testify; and his defense was not properly before the jury. However, upon review of the record, we determine the trial court did not abuse its discretion when it refused to grant Sanders' request for new trial counsel.
 {¶ 9} Appellate courts will review a trial court's decision regarding a request for a change in court-appointed counsel under an abuse of discretion standard. State v. Harrison (Jan. 17, 2001), 9th Dist. No. 20080, 2001 Ohio App. LEXIS 102, at *4, citing State v. Coleman (1988),37 Ohio St.3d 286, 292. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is *Page 4 
unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 10} The Supreme Court of Ohio has determined that an indigent criminal defendant does not have a constitutional right to choose his court-appointed attorney; rather, he is only entitled to competent legal representation. See, e.g., State v. Murphy (2001), 91 Ohio St.3d 516,523; State v. Cowans (1999), 87 Ohio St.3d 68, 72. "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." State v.Coleman, 37 Ohio St.3d 286, paragraph four of the syllabus.
 {¶ 11} Further, the Supreme Court of Ohio held that "when `an indigent accused questions the effectiveness and adequacy of assigned counsel, * * * it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record.'" State v. Ketterer,111 Ohio St.3d 70, 2006-Ohio-5283, at ¶ 139, quoting State v. Deal (1969),17 Ohio St.2d 17, syllabus. The court further noted that "`inquiry may be brief and minimal, but it must be made.'" Id., quoting State v.King (1995), 104 Ohio App.3d 434, 437.
 {¶ 12} In the instant case, Sanders raised his concern about his counsel at the jury trial, outside the hearing of the jury. A review of the transcript reveals the trial court engaged in a lengthy discussion (contained in nearly 20 pages of the transcript) with Sanders regarding his complaints about court-appointed counsel. First, with respect to the alleged use of excessive force by the police officers in apprehending and placing Sanders into custody, the trial court explained to Sanders that a motion in limine was *Page 5 
filed by the prosecution and this allegation could not be raised in the present case; however, if Sanders desired to pursue this claim, he could in a separate action. Further, the trial court informed Sanders of his constitutional right to testify on his own behalf. Yet, when the trial court asked Sanders, "[d]o you want to take the witness stand?" he replied, "[n]o." The trial court also engaged in an in-depth discussion with Sanders regarding his complaint that his attorney did not subpoena the proper witnesses. Therefore, based on the record, the trial court's refusal to grant Sanders' request for a new court-appointed attorney was not arbitrary, unreasonable, or unconscionable. The first assignment of error is without merit.
 {¶ 13} Sanders' second assignment of error states:
 {¶ 14} "Appellant was denied the effective assistance of counsel, contrary to his rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I, of the Ohio Constitution."
 {¶ 15} In State v. Bradley, the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, adopting the test set forth inStrickland v. Washington (1984), 466 U.S. 668. Moreover, "`a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness *Page 6 
claim on the ground of lack of sufficient prejudice, * * * that course should be followed.'" Id. at 143, quoting Strickland, 466 U.S. at 697.
 {¶ 16} Sanders argues his counsel failed to subpoena witnesses and did not listen to any of his ideas. However, Sanders' counsel stated:
 {¶ 17} "Just to place on the record we did investigate many of his requests including talking to some of the witnesses we believed were relevant. And just to verify what Miss Sheppert had said earlier there have been months of discovery, sharing information back and forth. So just to put on the record there was a good deal of preparation involved in this case."
 {¶ 18} Further, Sanders' counsel stated, "ultimately we felt they were not going to be relevant to the case."
 {¶ 19} In addition, "[t]he Supreme Court of Ohio has held that trial strategy decisions should not be second-guessed and that `"a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."'" State v.Ogletree, 11th Dist. No. 2005-P-0040, 2006-Ohio-6107, at ¶ 64, quotingState v. Mason (1998), 82 Ohio St.3d 144, 157-158, quotingStrickland, 466 U.S. at 689.
 {¶ 20} In this matter, it is clear that Sanders' trial counsel investigated his recommendation to subpoena the witnesses. However, it was determined the witnesses would not be relevant to the issues at hand. Such a decision was a trial strategy decision. See Toledo v.Prude, 6th Dist. No. L-02-1250, 2003-Ohio-3226, at *6. "The decision of trial counsel not to pursue every possible trial tactic for reasons of strategy does not result in ineffective assistance of counsel." Id. (Citations omitted.) *Page 7 
 {¶ 21} As verified by the record, defense counsel advocated for Sanders throughout the course of his representation. In addition, Sanders has failed to demonstrate that, but for counsel's decisions, there is a reasonable probability that the result of the proceeding would have been different. This court concludes that Sanders' trial counsel's conduct at trial was neither ineffective nor prejudicial. Therefore, the second assignment of error is not well-taken.
 {¶ 22} Sanders' third assignment of error states:
 {¶ 23} "The appellant's convictions for failure to comply with an order or signal of a police officer and petty theft [are] against the manifest weight of the evidence."
 {¶ 24} When addressing whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following test:
 {¶ 25} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387. (Citations omitted.)
 {¶ 26} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide. State v.DeHass (1967), 10 Ohio St.2d 230, 231.
 {¶ 27} Moreover, "[t]he trier of fact is free to believe or disbelieve all or any of the testimony. * * * The trier of fact is in the best position to take into account *Page 8 
inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. * * * Consequently, although an appellate court must act as a `thirteenth juror' when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. * * *" State v.Sevilla, 10th Dist. No. 06AP-954, 2007-Ohio-2789, at ¶ 13. (Internal citations omitted.)
 {¶ 28} With respect to count one, Sanders argues the testimony presented at trial failed to prove there was a substantial risk of serious physical harm to persons or property. We disagree.
 {¶ 29} A review of the record reveals the jury heard testimony from Lieutenant Sevel, Patrolman Putney, and Officer Tartaglia, all of whom were involved in the pursuit of Sanders' vehicle. In addition, the jury viewed the dash-cam video from vehicles of Lieutenant Sevel and Patrolman Putney. The officers also testified that Sanders' vehicle reached speeds in excess of 90 miles per hour, ran a red light, changed lanes without signaling, drove on the shoulder of the freeway, and drove between two police vehicles at a high rate of speed. Based on the testimony, the jury did not lose its way in finding Sanders guilty of failure to comply with an order or signal of a police officer, a violation of R.C. 2921.331(B).
 {¶ 30} With respect to his conviction on count two, petty theft, Sanders argues that Mr. Feldman testified he "frequently gave employees permission to take and use scrap metal." Since Sanders was not on the company's permanent payroll, he was not privy to the company's policies. Therefore, Sanders argues, it is reasonable that since *Page 9 
he observed other employees removing scrap metal from the bins, he "deduc[ed] he too could do the same." We disagree.
 {¶ 31} At trial, Mr. Feldman testified that while employees are prohibited from utilizing scrap metal for their own purposes, he has, on occasion, permitted very few employees to take scrap metal for a special project. Mr. Feldman also testified that he informed his managers that he is the only person who has the authority to allow an employee to take any metal. Further, when an employee is asked to take scrap out of the dumpster, it is taken out by the daytime manager. Mr. Feldman testified that he never gave Sanders permission to take any scrap metal. Based on the testimony of Mr. Feldman, we conclude the jury did not lose its way or create a manifest miscarriage of justice by finding Sanders guilty of petty theft.
 {¶ 32} Therefore, Sanders' third assignment of error is without merit.
 {¶ 33} The judgment of the trial court is affirmed.
DIANE V. GRENDELL, P.J., concurs, COLLEEN MARY OTOOLE, J., concurs in judgment only. *Page 1