[Cite as *State v. Moore*, 2023-Ohio-1904.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. 2022 CA 0065 |
| JOHN E. MOORE | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No  22 CR 00010


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      June 7, 2023


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JENNY WELLS                           WILLIAM T. CRAMER
PROSECUTING ATTORNEY                  470 Olde Worthington Road
KENNETH W. OSWALT                     Suite 200
ASSISTANT PROSECUTOR                  Westerville, Ohio  43082
20 South Second Street, 4th Floor
Newark, Ohio  43055

*Wise, J.*

{¶1}    Defendant-Appellant John E. Moore appeals his conviction on one count of Failure to Comply with Order or Signal of Police Officer entered in the Licking County Court of Common Pleas following a jury trial.

{¶2}    Appellee is the state of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶3}    On January 5, 2022, Detectives Kimble, Martens, and Mills, who were all assigned to the CODE drug enforcement task force, were surveilling a known drug location in Newark and observed a black Chevy pickup truck leave the location. Det. Kimble was in plain clothes in an unmarked car, while Detectives Martens and Mills were in uniforms and marked cars. Det. Kimble positioned himself behind the pickup truck, followed it, and observed the driver commit a number of traffic infractions, including failure to signal and speeding. (T. at 100-101, 105-106, 124, 187-190).

{¶4}    Det. Martens was in the first marked vehicle to pull up behind the truck, which fled before he could engage the cruiser's lights and sirens. The truck ran a stop sign and fled at a high rate of speed. Det. Martens activated his lights and sirens and pursued. The chase reached speeds in excess of sixty (60) miles per hour through residential neighborhoods where the speed limit was only twenty-five (25) miles per hour.

{¶5}    The truck continued to make turns and run stop signs until it circled back around to where they started. The truck drove along the gravel median between railroad tracks for a short time, but one of the tires blew out. The truck drove on the wrong side of the road at times and cut through a parking lot. At one point, the passenger door opened, but no one came out. Just before stopping, the truck drove on the sidewalks. The truck

eventually slowed and the driver and a passenger jumped out and fled on foot while the truck rolled into a curb. (T. at 126-129, 134-139).

{¶6} Det. Mills also joined in the pursuit of the truck but encountered traffic on the streets in the area around the pursuit, including a UPS truck making deliveries. When Det. Mills caught up, he tried to cut off the truck, but it went around him, over the sidewalk, and through a yard before coming to a stop. Det. Mills saw Appellant John E. Moore jump out of the truck and flee on foot. Det. Mills pursued until Appellant fell while trying to climb a wall, at which time Det. Mills detained Appellant. (T. at 198-202, 208).

{¶7} Det. Kimble was unable to engage in the car chase because he was in an unmarked car, but he maneuvered his vehicle so that he was in front of the truck. As the truck approached him, Det. Kimble saw the truck jump up onto the sidewalk. When the truck subsequently came to a stop, Det. Kimble observed Appellant Moore jump out of the driver's side and try to flee on foot with officers in pursuit. Det. Kimble then observed a female, Terri Lonzo, exit the passenger side of the truck and run away. Det. Kimble identified himself as an officer and told her to stop, but had to chase her down. (T. at 106-107, 109).

{¶8} After Appellant Moore was apprehended, the officers ran his information and learned that he had outstanding warrants. Appellant was searched and officers found a glass smoking bowl, commonly used for methamphetamine, and a small baggie of methamphetamine. Det. Mills spoke with Appellant, who admitted that he was the one driving the truck. Terri Lonzo was also searched, and officers found a couple of knives and some methamphetamine in a tin container in her bra.

**{¶9}** Appellant was not the registered owner of the truck. The officers ran the VIN number for the truck and found that it did not match the plates. The owner of the plates was tracked down in Muskingum County and claimed that he did not know they were missing. (T. at 111, 142-143, 205-206).

**{¶10}** Det. Kimble submitted the drugs found on Appellant to the lab, and they tested positive for .540 grams of methamphetamine. (T. at 114-115, 222-223).

**{¶11}** On January 23, 2022, Appellant was indicted on two counts: (1) Failure to Comply with an Order or Signal of a Police Officer, in violation of R.C. §2921.331(A), which was listed as a third-degree felony; and (2) Aggravated Drug Possession involving Methamphetamine, in violation of R.C. §2925.11(A)/(C)(1)(a), a fifth-degree felony.

**{¶12}** In March 2022, the matter came before the trial court on a *pro se* Motion to Dismiss based on the failure to charge a felony in the indictment. During the hearing, the prosecution admitted that the original indictment contained an error insofar as Count One alleged a violation of subdivision (A) of R.C. §2921.331, which would only be a misdemeanor, while the intent was to charge a felony under subdivision (B) of R.C. §2921.331. As a result, the prosecution was preparing a superseding indictment for the grand jury that would change Count One to a felony violation of subdivision (B).

**{¶13}** Defense counsel noted that he had scheduled a plea hearing and was hoping to enter a guilty plea and then argue that it was only a misdemeanor based on the language in the indictment, but Appellant's *pro se* motion alerted the prosecution to the oversight. The trial court agreed that that strategy might have been successful. Defense counsel asked to enter a plea at that time, but the trial court delayed any plea until the prosecution could obtain a superseding indictment.

{¶14} On March 10, 2022, two days later, the prosecution filed a superseding indictment which corrected Count One to refer to subdivision (B) and included the felony allegation that Appellant's operation of the vehicle caused a substantial risk of serious physical harm to persons or property.

{¶15} On April 22, 2022, a change of plea hearing was held. At that time, Appellant indicated that he had just received his discovery and no longer thought he wanted to enter a plea. The trial court noted that a trial was probably appropriate since Appellant claimed in the presentence investigation report that he was not driving. The trial court then set the matter for trial.

{¶16} Appointed counsel moved to withdraw based on an irreconcilable conflict and inability to communicate. On May 23, 2022, the court granted the motion and appointed new counsel.

{¶17} The case proceeded to jury trial on July 26-27, 2022.

{¶18} At trial the jury heard testimony from Det. Kimble, Det. Martens and Det. Mills.

{¶19} Det. Kimble stated it was "unreal" that nobody got hurt when Appellant drove on the sidewalk because it was the midday and they were in an area where there were usually kids around during the day. Det. Kimble also testified that he was concerned for officer safety while engaging in a chase. Det. Kimble claimed that Appellant demonstrated blatant disregard for human safety the way he was driving and that he could have hurt anybody. (T. at 110).

{¶20} Det. Martens also expressed concern about safety of pedestrians in the area, although he stated that he was too focused on the truck to see if there were any

nearby. Det. Martens noted that there were numerous cars parked on the street in the area. (T. at 140-141). Martens admitted that he did not see any pedestrians while reviewing the video of the chase. (T. at 162).

{¶21} The cruiser camera and body camera for Det. Martens and the cruiser camera for Det. Mills were all played for the jury. (T. at 129, 194).

{¶22} After two days, the case went to the jury, which found Appellant guilty as charged.

{¶23} The trial court proceeded immediately with sentencing and imposed a prison term of two (2) years for fleeing and eluding and six (6) months for drug possession, with the sentences ordered to run consecutively, for an aggregate sentence of two and one-half (2 ½) years. The trial court also imposed discretionary post-release control of up to two (2) years and a three-year driver's license suspension. The trial court granted Moore 202 days of jail credits. (Sentencing Entry, July 27, 2022; T. at 278-280).

{¶24} Appellant now appeals, raising the following assignment of error:

**ASSIGNMENT OF ERROR**

{¶25} "I. THE CONVICTION FOR FELONY FLEEING AND ELUDING WAS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE ON THE ISSUE OF WHETHER APPELLANT'S DRIVING CAUSED A SUBSTANTIAL RISK OF PHYSICAL HARM."

**I.**

{¶26} In his sole Assignment of Error, Appellant argues his conviction for fleeing and eluding was against the manifest weight of the evidence. We disagree.

{¶27} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the

entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶28}** Appellant herein is challenging his conviction on Fleeing and Eluding, in violation of R.C. §2921.331(B), which provides, in relevant part:

> (B)  No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.

**{¶29}**  R.C. §2921.331(C), further provides:

> (5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:

> (i) The operation of the motor vehicle by the offender was a proximate cause of serious physical harm to persons or property.

> (ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

> (b) If a police officer pursues an offender who is violating division (B) of this section and division (C)(5)(a) of this section applies, the sentencing court, in determining the seriousness of an offender's conduct for purposes

of sentencing the offender for a violation of division (B) of this section, shall consider, along with the factors set forth in sections 2929.12 and 2929.13 of the Revised Code that are required to be considered, all of the following:

(i) The duration of the pursuit;

(ii) The distance of the pursuit;

(iii) The rate of speed at which the offender operated the motor vehicle during the pursuit;

(iv) Whether the offender failed to stop for traffic lights or stop signs during the pursuit;

(v) The number of traffic lights or stop signs for which the offender failed to stop during the pursuit;

(vi) Whether the offender operated the motor vehicle during the pursuit without lighted lights during a time when lighted lights are required;

(vii) Whether the offender committed a moving violation during the pursuit;

(viii) The number of moving violations the offender committed during the pursuit;

(ix) Any other relevant factors indicating that the offender's conduct is more serious than conduct normally constituting the offense.

{¶30} Pursuant to R.C. §2901.01(A)(8), a substantial risk is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶31} "Serious physical harm to persons" includes any of the following:

(a) ***

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶32} R.C. §2901.01(5).

{¶33} "Serious physical harm to property" is defined as "any physical harm to property" that:

(a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;

(b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time.

{¶34} R.C. §2901.01(A)(6).

{¶35} Appellant herein argues that state of Ohio failed to prove that he caused a substantial risk of serious physical harm to persons or property because "there was very little vehicular traffic on the street … and there was no pedestrian traffic in the area." (Appellant's brief at 7).

{¶36} Upon review, we find that what is determinative for the enhanced felony charge is the *risk* of harm--not that *actual* harm occurred. *See, e.g., State v. Bason*, 8th

Dist. Cuyahoga No. 86112, 2005-Ohio-6492, ¶ 7 ("That no serious harm occurred to persons or property does not overcome the evidence that sufficiently established a substantial risk of it.")

**{¶37}** Ohio appellate courts have repeatedly held that high-speed chases inherently create a substantial risk of physical harm to the driver, officers, and other motorists on the road, since high speeds increase the likelihood and severity of crashes. *See State v. Owens*, 6th Dist. Lucas No. L-21-1148, 2022-Ohio-2908, ¶ 22-32; *State v. Jefferson*, 5th Dist. Richland No. 18CA2 and 18, CA3 2019-Ohio-156, ¶ 59; *State v. Scott*, 8th Dist. Cuyahoga No. 99524, 2013-Ohio-4599, ¶ 22; *State v. Sanders*, 11th Dist. Lake No. 2007-7-062, 2008-Ohio-1126, ¶ 29.

**{¶38}** Here, we find that the State presented testimony that Appellant fled from officers, initiating a high speed chase - traveling 60 mph in a 25 mph zone within a residential area where he ran stop signs, drove through the gravel area between two sets of railroad tracks, drove on the wrong side of the road, cut through parking lots, opened the passenger door of the vehicle while the vehicle was moving and jumped out of the vehicle without putting it in park. (T. at 127, 135-140, 199-201). This high-speed pursuit occurred shortly before 2:00 p.m. and included areas routinely frequented by pedestrians, including children, delivery vehicles, and parked cars. (T. at 132, 140-141, 199-200, 203).

**{¶39}** In addition to the public, Appellant also put the safety of the officers at risk as well as the safety of his passenger and himself.

**{¶40}** Also, early on in the car chase, one of the tires of Appellant's car went flat but he continued to drive on it. (T. at 128.) This resulted in actual damage to the vehicle by causing the inner fender well of the right front of the vehicle to be broken and come to

rest on the tire itself. (Tr. 153-154). Another tire was also flattened and the rim bent. (T. at 152-153).

**{¶41}** Upon review of the record, we find there was competent, credible evidence presented to establish that Appellant was the operator of the truck, that he led the police on a high-speed chase, and that his actions created a substantial risk of serious physical harm to persons and property. We do not find that this is the exceptional case in which the jury lost its way in weighing the evidence. Accordingly, we find Appellant's sole assignment of error not well-taken.

**{¶42}** Appellant's assignment of error is overruled.

**{¶43}** For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

King, J., concur.

JWW/kw  0602