[Cite as *State v. Rentas*, 2024-Ohio-732.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff- Appellee,          :

                            No. 112767

        v.                             :

JUAN RENTAS,                            :

    Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 29, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-679026-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Caroline Maver, Assistant Prosecuting Attorney, *for appellee*.

Charles Ruiz-Bueno Co., LPA, and J. Charles Ruiz-Bueno, *for appellant*.

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Defendant-appellant Juan Rentas was convicted after trial of kidnapping, rape, and felonious assault with sexual motivation and sexual predator

specifications. Rentas appeals only his convictions for rape and the sexually motivated and sexual predator specifications; he does not contest his conviction for felonious assault. He argues that the sexually oriented convictions are against the manifest weight of the evidence because the jury was swayed by the severity of the victim's injuries and did not properly evaluate her testimony. Because the jury had the ability to weigh the credibility of the victim's testimony and hear her explanations and because other evidence presented to the jury at trial corroborated her testimony, we do not find the convictions to be against the manifest weight of the evidence. Judgment affirmed.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

### Procedural History of the Case

{¶ 2} On February 28, 2023, appellant Juan Rentas was indicted on felony charges arising from an assault occurring in Lakewood, Ohio from July 13 to July 14, 2022. Rentas was indicted for one count of kidnapping, a felony of the first degree, two counts of rape, both felonies of the first degree, and two counts of felonious assault, both felonies of the second degree. The charges included sexual motivation specifications, notices of prior conviction, repeat violent offender specifications, and sexually violent predator specifications under R.C. 2941.148(A).

{¶ 3} Prior to trial, Rentas waived a jury as to the specifications, electing to try those to the bench. Trial commenced on April 12, 2023, and on April 19, 2023, the jury found Rentas guilty of one count of kidnapping, one count of rape, and one count of felonious assault. Thereafter, the trial court found Rentas guilty of the

sexual motivation and repeat violent offender specifications on the three counts for which he was found guilty, as well as finding Rentas to have a prior conviction as noticed in the indictment.

{¶ 4} On April 20, 2023, the trial court heard evidence as to the sexually violent predator specifications and found Rentas guilty of those specifications. On April 26, 2023, the trial court held a sentencing hearing and imposed an aggregate sentence of 33 years to life.[1]

**Summary of Relevant Evidence Presented at Trial**

{¶ 5} A.D. was in an on-and-off relationship with Rentas, but she broke up with him in June 2023. She testified that in the evening of July 13, 2022, and into the early morning hours of July 14, 2022, she was repeatedly beaten and sexually assaulted by Rentas. She said that her daughter, W.G., who lived in a second floor apartment, went to Florida for vacation. Rentas was aware W.G. was out of town and asked her if he could rent the apartment. W.G. agreed and asked A.D. to let Rentas into the apartment. A.D. testified that she was afraid to be near Rentas but,

---

[1] The court sentenced Rentas to serve a term of life imprisonment with the possibility of parole after serving 11 years with a consecutive term of incarceration of 1 year pursuant to the repeat violent offender specification for kidnapping; to a term of life imprisonment with the possibility of parole after serving 11 years with a consecutive term of incarceration of 1 year pursuant to the repeat violent offender specification for rape; and to a term of life imprisonment with the possibility of parole after serving 8 years with a consecutive term of incarceration of 1 year pursuant to the repeat violent offender specification. The trial court ordered the sentences for each count to be served consecutively.

despite that fear, agreed to let him into her daughter's apartment because she didn't want her daughter to lose the money Rentas would pay.

{¶ 6} On direct examination, A.D. testified she picked Rentas up from his house on Scranton Road in Cleveland, Ohio and took him to the apartment. On cross-examination, she said that she saw Rentas earlier in the day, then went to get a manicure and then went to a friend's house. She admitted that she did not tell police about seeing Rentas earlier in the day. A.D. testified that she went back to pick up Rentas and saw him near a corner store. He was upset and slammed the car door. Although A.D. left, she said she went back and picked Rentas up because she did not want W.G. to lose the money Rentas was to pay her.

{¶ 7} A.D. testified that when she and Rentas arrived at the apartment, she opened the door, Rentas hit her in the back of the head, and she fell unconscious. She testified she woke in the living room on a mattress. A.D. said that throughout the night, Rentas hit her repeatedly in both the head and body. She stated that the beating occurred throughout the apartment, that her eyes were swollen, and that it was a struggle to see. A.D. believed that at one point in time, she thought Rentas had a knife. A neighbor in the building testified that she heard arguing and noise several times during the night.

{¶ 8} A.D. testified that sometime during the night, Rentas wanted to have sex with her; she told him she did not want to have sex with him. She was hit again and awoke to being on a mattress in the living room with Rentas beside her. He inserted his fingers into her anus, causing her pain. A.D. said she was in the

apartment for hours and that when Rentas went to the bathroom, she left the apartment to find help. She first went to the first floor, found no one, then went to the third floor. There, a tenant Tyler Seastrand heard her screams. Seastrand testified that he looked in the hallway and saw Rentas throw A.D. to the floor. Seastrand opened the door, grabbed A.D., and pulled her into his apartment. Rentas tried to follow but Seastrand pushed him away and shut the door.

{¶ 9} Once A.D. was in the apartment, Seastrand's friend, Dacheya Simmons, wrapped a blanket around A.D. and called police. Rentas was in the hallway banging on Seastrand's apartment door when police and EMS responded. A.D. was taken to the hospital, and Rentas was arrested. Police later searched W.G.'s apartment. They observed clumps of hair on the floor of the apartment as well as blood on the floor, stove, and the mattress in the living room. They took photographs and collected samples of the blood, bedding from the apartment, A.D.'s clothing, and interviewed potential witnesses.

{¶ 10} At the hospital, A.D. was examined by a Sexual Assault Nurse Examiner. The nurse testified A.D. had severe swelling to both eyes, swelling to her upper lip, abrasions on her face, and a chipped tooth. She further noted that A.D. had swelling on her neck, bruises on her shoulders, back, and arms. The nurse completed a sexual assault kit, which included taking DNA swabs of A.D.'s buttocks

and perianal area.[2]  DNA Analyst Kyli Graham of the Ohio Bureau of Criminal Investigation testified that she analyzed two swabs from the sexual assault kit. Rentas's DNA was located on a swab taken from A.D.'s perianal area, as well as on a swab from A.D.'s buttocks.

{¶ 11} A.D. testified that she suffered numerous injuries, including hematomas on her brain and severe bruising and swelling; that she had an implant placed in her left cheek; and that she continued to have blurred vision and numbness on her face at the time of trial.  As to A.D.'s injuries, several witnesses described her eyes as being swollen to the point she could not open them after the assault.

{¶ 12}  After the assault, A.D. said that Rentas attempted to contact her by phone and that he sent letters to her through W.G.  A.D. testified that in the letters, Rentas asked for forgiveness for beating her, but denied that he raped or kidnapped her.  In addition to the testimony, the jury received physical evidence in the form of photographs of A.D. taken after the assault, photographs of the apartment, A.D.'s treatment records, and the bedding and clothing from the incident.

## LAW AND ARGUMENT

### Assignment of Error

{¶ 13}  Rentas raises one assignment of error, which reads:

The jury's rape verdict was against the manifest weigh of the evidence and prejudicial against Defendant-Appellant and the bench trial

---

[2] The perianal area was described by the nurse as being the tissue on the outside of the anus and at the anal opening.

findings of guilty on the sexual specifications based upon the jury verdict.

**{¶ 14}** Rentas does not contest the jury's verdict finding him guilty of felonious assault; instead, he argues that the jury lost its way in finding him guilty of rape and that the trial court similarly lost its way in convicting him of the sexual motivation specifications pursuant to R.C. 2941.147(A) and sexually violent predator specifications under R.C. 2941.148(A). He argues that the rape conviction was against the manifest weight of the evidence due to inconsistencies and contradictions between A.D.'s prior statements and trial testimony. The state argues that the verdicts were not against the manifest weight of the evidence and that both the jury and the trial court were made aware of inconsistencies, if any, in A.D.'s testimony. Further, the state argues that even considering any inconsistencies in A.D.'s testimony, other witnesses and evidence corroborated that testimony.

### Relevant Law and Standard of Review

**{¶ 15}** A manifest weight challenge to a conviction asserts that the state has not met its burden of persuasion in obtaining the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). A manifest weight challenge raises factual issues and we review the challenge as follows:

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Townsend*, 8th Dist. Cuyahoga No. 107177, 2019-Ohio-544, ¶ 20.

{¶ 16} Inconsistencies or contradictions in a witness's testimony do not entitle a defendant to a reversal of a trial. *State v. Solomon*, 8th Dist. Cuyahoga No. 109535, 2021-Ohio-940, ¶ 62, citing *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 45 (8th Dist.). Further, in *State v. R.I.H.*, 10th Dist. Franklin No. 18AP-93, 2019-Ohio-2189, ¶ 38, 41, the Tenth District noted that portions of a victim's trial testimony that were inconsistent with prior statements to police did not amount to a finding of a manifest miscarriage of justice where "the jury was aware of such inconsistency and was able to consider this when weighing the credibility of the testimony."

**The Convictions Are Not Against the Manifest Weight of the Evidence**

{¶ 17} Within the sole assignment of error, Rentas points to inconsistencies or contradictions in A.D.'s testimony and the evidence. He notes, for example, that A.D. testified she was afraid of Rentas, but met with him and took him to W.G.'s apartment. Further, Rentas points out that A.D.'s testimony about how much alcohol she drank was inconsistent with the medical records that showed an elevated blood-alcohol level. Additionally, Rentas argues that A.D.'s testimony was not consistent with her prior testimony to police regarding when she first encountered Rentas on the day of the assault, the timing of when the assault started, and details during the assault. Further, Rentas argues A.D.'s testimony differs from police and

neighbors' testimony as to what A.D. was wearing when she escaped the apartment. He argues that these contradictions and inconsistencies were ignored by the jury because of the severity of the injuries A.D. sustained. As such, he claims the jury and trial court lost their way in convicting him.

{¶ 18} As to the inconsistencies or contradictions in the testimony, the jury heard the inconsistencies during A.D.'s testimony and A.D. was able to explain any inconsistencies between her testimony and statements made to the police. Further, A.D.'s testimony as to the physical and sexual assault she suffered was corroborated by the physical evidence presented to the jury, including the neighbors' accounts, photographs of A.D.'s injuries, her medical records, and the DNA evidence. Accordingly, our review of the record does not lead us to find that this is the exceptional case in which the evidence weighs heavily against a conviction and that a manifest miscarriage of justice occurred. *Thompkins*, *supra*.

## CONCLUSION

{¶ 19} Rentas's convictions for kidnapping, rape, and felonious assault with sexual motivation and sexual predator specifications are affirmed. Rentas argues that the rape and specification convictions are against the manifest weight of the evidence due to inconsistencies and contradictions in A.D.'s testimony and that because of the severity of A.D.'s physical injuries, the jury did not properly consider the import of those inconsistencies and contradictions. However, the jury was aware of any inconsistencies between A.D.'s testimony and her prior statements and had the ability to weigh her credibility. Further, physical evidence, including DNA

evidence at trial, corroborated the victim's testimony. As such, we do not find that the jury and the trial court lost their way in entering convictions and the convictions were not against the manifest weight of the evidence.

{¶ 20} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EMANUELLA D. GROVES, J., CONCUR