[Cite as *State v. Beard*, 2025-Ohio-5521.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                  :

     Plaintiff- Appellee,                  :

                                             No. 115019

     v.                                       :

DAVID  D. BEARD, JR.,                           :

     Defendant-Appellant.                  :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 11, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-690536-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brittany Stipich, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Defendant-appellant David D. Beard, Jr. ("Beard") appeals from the judgment of his convictions for one count of failure to comply, one count of having

weapons while under disability, and two counts of aggravating menacing. He presents the following assigned errors for our review:

1. There was insufficient evidence produced at trial to support a finding of guilt on the charge of failure to comply.

2. The jury lost their way by finding the defendant guilty of both failure to comply and having a weapon while under disability, as both verdicts were against the manifest weight of the evidence.

{¶ 2} Upon reviewing the record and the relevant law, we overrule Beard's two assignments of error.

## I.    Relevant Facts and Procedural History

### A. Relevant Facts

{¶ 3} In March 2023, Ms. Smith ("Smith") and her friend Ms. Williams ("Williams") were headed to Ms. Smith's grandmother's house. Smith was 20 years old, and Williams was 19 years old at the time. It was dark outside and they got off the bus at the wrong bus stop.

{¶ 4} The two women walked across the street to a gas station. In the parking lot of the gas station, the women saw a man they had never met before, later identified as Beard, a 70 year-old male, sitting in his car. Smith testified that Williams looked at Beard and said to him "what the hell are you looking at." Beard asked Williams if she was lost and if she needed a ride, and Williams told him yes.[1] Both women got into Beard's car with the belief that Beard would give them a ride

---

[1] Williams disputed this and testified that it was Smith who wanted to agree to Beard's offer to give them a ride.

to Smith's grandmother's house. Smith got into the back seat of Beard's vehicle. Williams sat in the front seat.

{¶ 5} Rather than head to Smith's grandmother's house, Smith testified that Beard drove them to a liquor store. When they got there, Beard gave Williams 40 dollars and asked her to go into the store and buy him some liquor. Williams testified that when she got out of the car, Beard locked Smith's door and said, "[Y]ou go in there, your friend got to stay in the car." Williams went into the store.

{¶ 6} Williams testified that while in the store, she contacted the store's security guard because she believed that the man, Beard, was attempting to kidnap her and Smith. She contacted security and told the security guard that there was man that was "trying to kidnap us." Williams stated the security guard came outside, confronted Beard, and began speaking to him.

{¶ 7} While the security guard was speaking with Beard, Williams testified that she ran to the right side of Beard's car and unlocked Smith's door and the two started to run away. Smith heard Beard say, "[B]itch, give me my money" and pulled out his gun, pointed it at her, and began chasing them. As he chased them, Smith stated that Beard was screaming, "[B]itch, give me my money" while shooting the gun. Smith stated that she never saw Beard shoot the firearm but that she heard the shots. Williams testified that as she was running, Beard shot the gun one time. She got scared and stopped. She then heard Beard shoot the gun a second time.

{¶ 8} Smith and Williams both stated that they ran to a McDonald's where they saw a man in his vehicle at the drive-through with his son in the front seat.

Williams testified that she told the man in the drive-through that a man was trying to get them. The man in the drive-through let the women in his car and drove off. The man gave the women a ride to Smith's grandmother's house.

{¶ 9} When they arrived at Smith's grandmother's house, Smith testified that she exited the car and went to the house. Williams was still in the car. Smith stated that Beard must have followed them because when she told Williams to get out of the car, she saw Beard pointing a gun at Williams. Smith stated that Beard "clocked [the gun] back" and told Williams to "give me my money." Williams testified that the whole time this was happening, she was calling the police. Williams stated that when Beard heard the police coming, he got into his car and "zoomed off."

{¶ 10} While inside her grandmother's house, Smith stated that she used her grandmother's phone to call the police. The police came to her grandmother's house where she provided a statement.

{¶ 11} Officer Wanda Wright ("Officer Wright") spoke to Smith and Williams when she arrived on scene. She was able to get a description of the suspect and a description of the vehicle. She put the description of the suspect and the suspect's vehicle over the radio to make assisting patrol cars aware so they could help in locating the suspect and the suspect vehicle.

{¶ 12} Officer Joshua Brogan ("Officer Brogan") was working patrol that night with his partner. He testified that he was given instructions to tour the area for a vehicle matching the description involved in the incident. Officer Brogan stated

that the vehicle had been described as a red Chevy sedan, possibly a Chevy Cruz. Officer Brogan eventually located the vehicle in a parking lot near the corner of McBride and Broadway Avenue.

{¶ 13} Officer Brogan stated that when the officers located the vehicle, they pulled up behind the vehicle and activated their overhead lights. Officer Brogan testified that he got out of his vehicle and approached the vehicle from the passenger side to speak with the driver. When he approached the vehicle, he stated that the person in the vehicle matched the description of the suspect that had been provided. Officer Brogan asked the man to shut off his vehicle. The man told Officer Brogan "no." Officer Brogan asked again, and the suspect responded with "hell no." The suspect then put the car in drive and "took off from the parking spot." Officer Brogan testified that he could not estimate how fast he drove off but he did note that there were other vehicles parked in the parking lot at the time. This interaction was recorded on Officer Brogan's bodycam, a copy of which was introduced at trial as State's exhibit No. 4.

{¶ 14} Officer Brogan testified that he attempted to follow the vehicle. He ran back to his car, got in, and exited the parking lot. However, by that time, Officer Brogan testified that they had lost sight of the vehicle.

**B. Procedural History**

{¶ 15} On March 28, 2024, Beard was charged in a 15-count indictment. The indictment charged Beard with the following offenses:

1.   Kidnapping, in violation of R.C. 2905.01(B)(2), a felony of the first degree, with one- and three-year firearm specifications
     - Victim: [Williams]

2.   Kidnapping, in violation of R.C. 2905.01(B)(2), a felony of the first degree, with one- and three-year firearm specifications
     - Victim: [Smith]

3.   Felonious assault, in violation of R.C. 2903.11(A)(2), a felony of the second degree, with one- three- and five-year firearm specifications
     - Victim: [Williams]

4.   Felonious assault, in violation of R.C. 2903.11(A)(2), a felony of the second degree, with one- three- and five-year firearm specifications
     - Victim: [Smith]

5.   Discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3), a felony of the third degree, with one- and three-year firearm specifications

6.   Aggravated Robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree, with one- and three-year firearm specifications
     - Victim: [Williams]

7.   Aggravated Robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree, with one- and three-year firearm specifications
     - Victim: [Smith]

8.   Robbery, in violation of R.C. 2911.01(A)(2), a felony of the second degree, with one- three- and five-year firearm specifications
     - Victim: [Williams]

9.   Robbery, in violation of R.C. 2911.01(A)(2), a felony of the second degree, with one- three- and five-year firearm specifications
     - Victim: [Smith]

10. Aggravated menacing, in violation of R.C. 2903.21(A), a first-degree misdemeanor
   - Victim: [Williams]

11. Aggravated menacing, in violation of R.C. 2903.21(A), a first-degree misdemeanor
   - Victim: [Smith]

12. Aggravated menacing, in violation of R.C. 2903.21(A), a first-degree misdemeanor
   - Victim: [W.M.]

13. Impersonation of a peace officer or private police officer, in violation of R.C. 2921.51(D), a first-degree misdemeanor

14. Failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(B), a felony of the third degree
   - and did operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer o bring his motor vehicle to a stop and the operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to a person or property.

15. Having weapon while under disability, in violation of R.C. 2923.13(A)(2), a felony of the third degree.

{¶ 16} The case was tried by jury. After the State presented its case in chief, Beard moved for a judgment of acquittal pursuant to Crim.R. 29(A). The State conceded that the standard from Crim.R. 29 had not been met with respect to Counts 6, 7, 8, and 9 in the indictment. The State also conceded that it had not met its burden with respect to the five-year firearm specifications. As a result, the court dismissed Counts 6, 7, 8, and 9, as well as all the five-year firearm specifications. The trial court granted Beard's motion with respect to Counts 12 and 13. Counts 1, 2, 3, 4, 5, 10, 11, 14, and 15 remained.

{¶ 17} The jury returned a verdict of guilty to two counts of aggravated menacing, misdemeanors of the first degree, as originally charged in Counts 10 and 11 of the indictment; failure to comply, a felony of the third degree, as originally charged in Count 14 of the indictment; and having weapons while under disability, a felony of the third degree, as originally charged in Count 15 of the indictment. The jury returned a verdict of not guilty on all remaining counts.

{¶ 18} At sentencing, the trial court imposed an aggregate prison sentence of 21 months. The trial court sentenced Beard to 9 months in prison for the failure-to-comply offense; 12 months in prison for the having weapons while under disability offense; and 180 days of local incarceration for aggravated menacing. The prison sentences were ordered to run consecutively to one another.

## II. Law and Analysis

### First Assignment of Error – Sufficiency of the Evidence

{¶ 19} In his first assigned error for review, Beard alleges that the State presented insufficient evidence to support the jury's finding that while committing a failure to comply offense, Beard operated his vehicle in a manner that "caused a substantial risk of serious physical harm to persons or property." After a thorough review of the record, we find that the evidence was sufficient to support the jury's finding on this felony-enhancement provision.

### A. Standard of Review

{¶ 20} "The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial." *State v. Wilborn,*

2024-Ohio-5003, ¶ 37 (8th Dist.), citing *State v. Cottingham,* ¶ 32 (8th Dist.). In reviewing a challenge based on sufficiency, we must "'determine whether the evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.'" *State v. Webb,* 2025-Ohio-456, ¶ 9 (8th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. A sufficiency review "is not a factual determination, but a question of law." *State v. Jackson,* 2025-Ohio-109, ¶ 25 (8th Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997).

{¶ 21} When reviewing the evidence, we must keep in mind that "[p]roof of guilt may be supported 'by circumstantial evidence, real evidence, and direct evidence, or any combination of all three, and all three have equal probative value.'" *Wilborn* at ¶ 38, quoting *State v. Radano,* 2017-Ohio-1034, ¶ 35 (8th Dist.). And although each type of evidence has their obvious differences, "those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence." *Id.,* citing *State v. Cassano,* 2012-Ohio-4047, ¶ 13 (8th Dist.). Our review of the evidence is not to determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390.

**B. Analysis**

{¶ 22} Beard was convicted of failure to comply in violation of R.C. 2921.331(B), which provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." A violation under division (B) of the statute is generally a felony of the fourth degree. R.C. 2921.331(C)(3). However, a violation of this division of the statute is a felony of the third degree if, while committing the offense, "[t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331(C)(5)(a)(ii).

{¶ 23} Beard's sufficiency argument does not challenge the core elements of his failure-to-comply conviction. Rather, his challenge is limited to the felony-enhancement provision of his conviction, alleging that the evidence was insufficient to demonstrate that he caused a "substantial risk" of serious physical harm to persons or property while operating his vehicle.

{¶ 24} R.C. 2901.01(A)(8) defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances exist."

{¶ 25} Beard argues that because Officer Brogan testified that he did not know how fast Beard was going when he exited the parking lot, there was insufficient evidence to support the jury's finding on the felony enhancement. We recognize that the speed that Beard was traveling is a factor that may be considered in support of

the jury's finding, but it is not the dispositive factor. The determinative factor in reviewing this enhanced-felony provision "is the *risk* of harm – not that *actual* harm occurred." (Emphasis in original.) *State v. Moore,* 2023-Ohio-1904, ¶ 36 (5th Dist.), citing *State v. Bason,* 2005-Ohio-6492, ¶ 7 (8th Dist.) (stating "[t]hat no serious harm occurred to persons or property does not overcome the evidence that sufficiently established a substantial risk of it"). This court has recognized that when an offender flees from police and leads them on a chase, it can create a substantial risk of serious physical harm to persons or property, creating a strong possibility that the offender could injure himself, the police chasing him, and other pedestrians or drivers on the road. *See State v. Scott,* 2013-Ohio-4599, ¶ 23 (8th Dist.).

{¶ 26} Here, Officer Brogan testified that when officers located Beard's vehicle parked in a parking lot near McBride and Broadway Avenue, they pulled up behind  Beard's vehicle and activated their overhead lights. Officer Brogan approached the vehicle from the passenger side while his partner approached the driver side of the vehicle. Officer Brogan advised Beard to turn the vehicle off multiple times. Beard refused, "put the car in drive[,] and then took off from the parking spot." Officer Brogan noted that there were other vehicles in the area when Beard took off, including zone cars and civilian vehicles.

{¶ 27} Officer Brogan stated that he attempted to follow Beard, ran back to his zone car, and drove out of the parking lot attempting to locate Beard. Officer Brogan testified that another zone car possibly gained sight of Beard's vehicle before officers lost it again.

{¶ 28} Officer Brogan's body camera was equipped and activated during this encounter. A copy of the footage from the body camera was introduced at trial as State's exhibit No. 4. The body camera confirms Officer Brogan's testimony. The footage shows Officer Brogan approaching the passenger side of Beard's vehicle in a narrow space between Beard's vehicle and a parked car immediately next to it. Officer Brogan asks Beard multiple times to turn off the car. Beard responds saying "for what" and "aw, nah" before putting the car in drive and quickly exiting the parking spot. In doing so, the video shows Beard's vehicle crossing the parking spot across from it and enter the drive aisle of the parking lot without stopping to ensure the path was clear to enter. It appears from the footage that Beard's vehicle exits the parking lot without making a complete stop at a stop sign.

{¶ 29} The footage also shows that upon Beard's exit, one of the officers appears to quickly move away from Beard's vehicle and officers quickly hurried to their vehicles to pursue Beard. By the time officers were able to exit the parking lot in pursuit, Beard had left the scene. Officers continued to search for him but were unable to locate him after Beard's quick exit from the parking lot.

{¶ 30} For these reasons, we find that the evidence presented at trial is sufficient to support the jury's finding that Beard's operation of his vehicle while attempting to escape from police caused a substantial risk of harm to persons or property. By fleeing the police in the way he did, a reasonable jury could conclude that Beard could have injured himself, police, or any other pedestrians or vehicles in the parking lot or on the road that night.

{¶ 31} We find sufficient evidence to support the jury's finding on the felony-enhancement provision of his failure-to-comply conviction. Accordingly, Beard's first assignment of error is overruled.

**Second Assignment of Error – Manifest Weight**

{¶ 32} In his second assigned error for review, Beard claims that the jury's findings on the felony-enhancement provision of his failure-to-comply conviction and his conviction for having weapons while under disability are against the manifest weight of the evidence.

**A. Standard of Review**

{¶ 33} In contrast to a sufficiency challenge, a challenge with respect to the weight of the evidence concerns """the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.""" *State v. Hughes-Davis,* 2025-Ohio-3151, ¶ 24 (8th Dist.), quoting *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 12, quoting *Thompkins,* 78 Ohio St.3d at 387. The Ohio Supreme Court has stated that when conducting a manifest-weight review, the reviewing court "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.,* 2023-Ohio-4703, ¶ 14, citing *Eastley* at ¶ 20.

{¶ 34} In conducting this review, the Ohio Supreme Court noted that we must be mindful of the presumption in favor of the finder of fact, and "'[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Parma Hts. v. Brett,* 2025-Ohio-4, ¶ 21 (8th Dist.), quoting *Z.C.* at ¶ 14. As such, a judgment will be reversed as against the manifest weight of the evidence ""only in the exceptional case in which the evidence weighs heavily against the conviction."'" *Jackson,* 2025-Ohio-109, at ¶ 25 (8th Dist.), quoting *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**B. Analysis**

**1. Failure to Comply**

{¶ 35} With respect to his failure-to-comply conviction, Beard renews his challenge to the evidence presented in support of the felony-enhancement provision of this offense. As discussed above, the State presented sufficient evidence to support its finding. Beard does not offer any new arguments under this assignment of error, apart from the ones raised above. Beard has failed to show that jury lost its way in its finding on this provision. Absent such a showing, we will not substitute our judgment for that of the jury's.

**2. Having Weapons While Under Disability**

{¶ 36} Beard was convicted of having weapons while under disability in violation of R.C. 2923.13(A)(2), which provides, in relevant part, that "[n]o person

shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if . . . [t]he person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence."

{¶ 37} Beard argues that the jury's determination that he possessed a firearm that night was against the manifest weight of the evidence. Beard argues that the only evidence establishing he possessed a firearm was the testimony of Smith and Williams. Both women testified that they saw Beard with a firearm that night, both women testified that he chased them while firing the gun, and both women testified that pointed the gun directly at Williams when they had arrived at Smith's grandmother's house. Beard argues that neither women's testimony is credible.

{¶ 38} It has been well recognized that "inconsistencies or contradictions in a witness's testimony do not entitle a defendant to a reversal of a trial." *State v. Rentas,* 2024-Ohio-732, ¶ 16 (8th Dist.), citing *State v. Solomon,* 2021-Ohio-940, ¶ 62 (8th Dist.). Nor does the presence of conflicting testimony render a verdict against the manifest weight of the evidence. *State v. Pace,* 2025-Ohio-2874, ¶ 62 (10th Dist.). As a result, "a jury is free to accept or reject any or all the testimony of any witness." *State v. Cowen,* 2012-Ohio-3682, ¶ 54 (8th Dist.), citing *State v. Smith,* 2010-Ohio-4006, ¶ 16 (8th Dist.).

{¶ 39} Here, Beard directs us to several details that the women failed to remember during their testimony, such as whose house they were coming from or

what side of the road they were on when they were dropped off by the bus. He also claims that the women's testimony conflicted concerning whether they had voluntarily entered Beard's car and whether Smith was locked in Beard's vehicle.[2] Beard also argues that the women's testimony conflicted with respect to whether Beard went directly to the liquor store after entering his car. Beard also directs us to Smith's testimony that her phone's battery was dead during the incident but failed to tell the police that when they interviewed her, as well as her testimony that she did not actually see Beard fire the gun but only heard the gunshots.

{¶ 40} None of these moments of forgetfulness or inconsistencies demonstrate that the jury lost its way in determining that Beard was in possession of a firearm that night. As such, we cannot say that this is one of those rare cases in which the conviction was against the manifest weight of the evidence.

{¶ 41} Accordingly, Beard's second assignment of error is overruled.

## III. Conclusion

{¶ 42} We find that the evidence presented at trial was sufficient to support the jury's finding that Beard created a substantial risk of serious physical harm to persons or property in support of the felony-enhancement provision of the failure-to-comply offense. We also find that his convictions were not against the manifest weight of the evidence.

---

[2] With respect to this testimony, it must be noted that the jury returned a verdict of not guilty with respect to the kidnapping charges.

{¶ 43} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

LISA B. FORBES, J., and
DEENA R. CALABRESE, J., CONCUR