{¶ 1} Defendant-appellant Eric McCay appeals from his convictions after a jury found him guilty of tampering with evidence and receiving stolen property.
 {¶ 2} McCay argues in his three assignments of error that prosecutorial misconduct compromised his right to a fair trial, and that his conviction for receiving stolen property is not supported by either sufficient evidence or the manifest weight of the evidence. *Page 2 
 {¶ 3} Following a review of the record, however, this court finds none of McCay's assignments of error have merit. Consequently, his convictions are affirmed.
 {¶ 4} McCay's convictions result from an incident that occurred in the early morning hours of June 28, 2005. According to one of the victims, Michael Knapp, he went home immediately after his work shift ended that morning at 1:15 a.m. Knapp lived in the upstairs unit of a duplex house located in the city of Cleveland on West 52nd Street near Storer Avenue.
 {¶ 5} Knapp's new downstairs neighbor, James Coots, was in the process of moving into the residence, so, when Knapp noticed "a computer monitor and a piece of stereo equipment" placed on the ground near the house's side entrance, he "didn't think anything of it." Knapp entered the door and proceeded upstairs. A Knapp unlocked his own unit, however, he heard "someone coming up the steps behind" him and turned to see a man "pointing a pistol" at him. The man ordered him inside. Knapp obeyed.
 {¶ 6} The man then pushed the gun against the back of Knapp's head, forced Knapp to lie on the floor, and demanded to know where the "cell phone" and "the motorcycle" were. Knapp told the man he had neither of those things. At that point, the man ordered him to get back up, and, with the gun placed against the back of Knapp's head, forced Knapp to go to the downstairs unit. *Page 3 
 {¶ 7} Knapp testified that since Coots' unit was "dark," although he could see "silhouettes of three people standing" inside, he could not identify either gender or features of those people. Knapp's captor kept the gun to his head while ordering the others to take him down. Two of the other persons in the room thereupon pushed him to the floor and began to pull "stuff out of [his] pockets."
 {¶ 8} Suddenly, Knapp heard a "loud crash." Someone began "screaming help, call the police, we're being robbed." The people around Knapp "ran out the door," abandoning him. Knapp later learned that Coots had flung himself through a window and had run to a neighbor for help.
 {¶ 9} Knapp himself waited a few moments, then escaped outdoors, where he proceeded to a nearby pay telephone to call the police. Knapp then returned to the house and waited for them to arrive.
 {¶ 10} In the meantime, the radio dispatch concerning the incident went out to police units. Officer Michael Keane testified he was on patrol with his partner, Daniel Lentz when he heard the broadcast. Shortly thereafter, they "came across a vehicle operating recklessly * * * off of Morgan Avenue on East 65[th Street]." Keane stated the car, a Pontiac, was being operated at a high rate of speed; it went through a stop sign, traveled left of center, and almost struck another vehicle.
 {¶ 11} When Lentz drove in pursuit with lights and siren activated, the Pontiac's driver refused to stop. As it approached Newman Avenue, Keane *Page 4 
observed "the vehicle's front seat passenger throw property out" of his window. The driver was forced to apply the brakes at the end of Newman Avenue, which was a "dead end street;" the car "crashed into a house."
 {¶ 12} At that point, the driver, later identified as Cordon Smith, "bailed out." Lentz chased him, while Keane "ran around to the [Pontiac's] passenger side. The passenger was still throwing property out of the car." Keane ordered the front seat passenger, whom he identified as appellant McCay, out of the car. A woman who sat in the rear passenger seat, later identified as Shontia Svec, also was removed and arrested. Items that seemed to belong to a person named "Ayman Almousa" and a gun were found in the car.
 {¶ 13} The items Keane saw McCay throwing from the Pontiac were retrieved. One was a wallet that contained a driver's license for Michael Knapp. Several other cards and papers also bore Knapp's name.
 {¶ 14} Knapp subsequently was able to identify his belongings, but not the people who had been present in his house, and who had taken those belongings. However, Svec eventually provided information about the incident that implicated McCay, Smith, and another man she knew as Smith's cousin.
 {¶ 15} McCay was indicted together with Smith; nine of the eleven counts in the indictment pertained to McCay. McCay was charged with two counts of aggravated robbery, two counts of aggravated burglary, one count of failure to *Page 5 
comply with the signal or order of a police officer, one count of tampering with evidence, two counts of receiving stolen property, and one count of having a weapon while under disability. The first four counts also contained a three-year and a one-year firearm specification.
 {¶ 16} McCay and Smith were tried together, but Smith signed a jury waiver with respect to the charges against him. The state presented the testimony of Svec, Knapp, and several of the police officers involved in the case. In response to McCay's motion for acquittal, the trial court granted it as to two counts, viz., failure to comply and one count of receiving stolen property.
 {¶ 17} At the conclusion of trial, the jury acquitted McCay of most of the charges, but found him guilty of tampering with evidence and the remaining count of receiving stolen property. McCay received a sentence for his convictions that totaled three years.
 {¶ 18} He presents three assignments of error in this appeal.
 {¶ 19} "I. Eric McCay was denied due process and a fair trial as a result of several instances of prosecutorial misconduct that individually and in combination rendered the proceedings fundamentally unfair.
 {¶ 20} "II. Eric McCay's conviction for receipt of Stolen Property is based on evidence that is insufficient as a matter of law, in violation of McCay's rights to due *Page 6 
process and a fair trial as guaranteed by Article I, Sections 10 and 16
of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution.
 {¶ 21} "III. Eric McCay's conviction for Receipt of Stolen Property is against the manifest weight of the evidence."
 {¶ 22} McCay argues in his first assignment of error that the prosecutor engaged in misconduct during the course of trial which tainted the fairness of the proceedings and thus renders his convictions reversible.
 {¶ 23} In order to determine whether prosecutorial misconduct occurred, a reviewing court must determine whether the challenged actions, statements or questions were improper, and if so, whether in the context of the entire record, they affected the defendant's substantial rights, including his right to a fair trial. State v.Papp (1978), 64 Ohio App.2d 203; State v. Smith (1984),14 Ohio St.3d 13; State v. Smith, 87 Ohio St.3d 424, 2000-Ohio-450.
 {¶ 24} With respect to closing argument, the prosecutor is entitled to a certain degree of latitude. State v. Apanovich (1987),33 Ohio St.3d 19. Isolated comments, therefore, should not be taken out of context and given their most damaging meaning. State v. Carter, 89 Ohio St.3d 593,2000-Ohio-172. Although it is impermissible for the prosecutor to offer his personal opinion as to the credibility of the evidence, a prosecutor may argue that the evidence supports a finding of guilt. State v.Smith, 80 Ohio St.3d 89, 1997-Ohio-355. The test is whether, absent the *Page 7 
challenged remarks, the jury would have found the defendant guilty.State v. Maurer (1984), 15 Ohio St.3d 239, 267.
 {¶ 25} McCay contends the following actions constituted misconduct: 1) presenting Svec as a state's witness; 2) "vouching" for Svec's credibility during "rebuttal" closing argument; 3) introducing evidence that "Ayman Almousa's" belongings were inside the Pontiac; 4) making reference to McCay's election not to present evidence in his defense; and, 5) offering personal opinion concerning the strength of the state's case.
 {¶ 26} With regard to McCay's first and second contentions, he acknowledges that "Svec was the only witness that placed [him] at the scene of the house * * * where the theft offenses occurred." As to his third contention, the record reflects that the trial court dismissed one count against McCay, i.e., that of receiving stolen property belonging to "Ayman Almousa."
 {¶ 27} The jury acquitted McCay of all the charges that related to the scene of the robbery. Therefore, even if this court should assume arguendo that: either the mere presentation of Svec as a witness for the prosecution, or the introduction of evidence that another person's belongings were inside the Pontiac, somehow constituted "misconduct," nevertheless, McCay cannot establish that the evidence "substantially" prejudiced his rights. Consequently, his first three contentions lack any merit. *Page 8 
 {¶ 28} McCay additionally contends the prosecutor made an improper comment on his decision not to testify. The record reflects that defense counsel immediately objected to this comment.
 {¶ 29} After a sidebar conference, the trial court thoroughly instructed the jury that a defendant had "a constitutional right * * * not to testify, and the fact that the defendant does not testify must not be considered for any purpose. * * * [Furthermore, I] ask you to strike that [comment] from your collective minds in light of the fact that we don't have to hear from the defendant because the burden is on the State to produce evidence that convinces you of [guilt] beyond a reasonable doubt."
 {¶ 30} The jury is presumed to follow the trial court's instructions.Pang v. Minch (1990), 53 Ohio St.3d 186. Since any error that occurred thus quickly was corrected, McCay's fourth contention also fails.
 {¶ 31} Finally, McCay takes issue with the prosecutor's explanation concerning how the case against him came to be pursued. A review of these comments reveals they were made in response to innuendo raised by defense counsel in his closing argument; counsel suggested the prosecution proceeded without a careful analysis of its merit. In context, therefore, the prosecutor's explanation does not constitute improper comment. State v. Rogers (July 20, 2000), Cuyahoga App. No. 76355.
 {¶ 32} Moreover, the prosecutor urged the jury to fulfill its function in weighing the credibility of the evidence. McCay's convictions on only two of the seven counts *Page 9 
considered by the jury implies the jury undertook its responsibility without being affected by the parties' closing arguments.
 {¶ 33} For the foregoing reasons, McCay's first assignment of error is overruled.
 {¶ 34} McCay additionally argues in his second and third assignments of error that his conviction for receiving stolen property is unsupported by either sufficient evidence or the manifest weight of the evidence. He thus contends the trial court improperly denied his motion for acquittal on this charge. In these assignments of error, therefore, McCay does not raise any challenge to his conviction for tampering with evidence.
 {¶ 35} A defendant's motion for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crime has been proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 1997-Ohio-372;State v. Jenks (1991), 61 Ohio St.3d 259; State v. Bridgeman (1978),55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983),20 Ohio App.3d 172.
 {¶ 36} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the factfinder "clearly lost its way *Page 10 
and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin, supra at 175.
 {¶ 37} This court must be mindful, therefore, that the weight of the evidence and the credibility of the witnesses are matters primarily for the factfinder to consider. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 38} R.C. 2913.51(A) prohibits a person from receiving, retaining or disposing of property "of another knowing or having reasonable cause to believe that the property has been obtained through the commission of a theft offense."
 {¶ 39} In this case, the evidence proved that McCay was a front seat passenger in a car that was being driven by Smith. After Smith committed a traffic offense, Smith failed to stop when the police activated their lights and siren. With the police in pursuit, McCay began tossing items out of his window. These items were a wallet, plastic cards and papers that belonged to Knapp, who had been the victim of a robbery that had occurred within that same hour.
 {¶ 40} When viewed in a light most favorable to the prosecution, this evidence proved McCay decided to get rid of what he knew was stolen property in case the police apprehended him. This constituted sufficient evidence to support the elements of the offense. State v. Davis (1988),49 Ohio App.3d 109; State v. Wilson *Page 11 
(1985), 21 Ohio App.3d 171. Therefore, the trial court did not err in denying McCay's motion for acquittal on this count.
 {¶ 41} The manifest weight of the evidence also supported McCay's conviction on this charge, since the testimony of the witnesses was consistent and was corroborated by the physical evidence and by the time frames in which the events occurred. State v. White, Butler App. No. CA2002-07-161, 2003-Ohio-2011.
 {¶ 42} Accordingly, since McCay's conviction for receiving stolen property is supported by both sufficient evidence and the manifest weight of the evidence, his second and third assignments of error also are overruled.
Convictions affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 12 
 COLLEEN CONWAY COONEY, P.J., and MARY EILEEN KILBANE, J., CONCUR *Page 1