[Cite as *State v. Gilmore*, 2026-Ohio-577.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff- Appellee, | : | No. 115243 |
| v. | : | |
| CHRISTOPHER GILMORE, | : | |
| Defendant-Appellant. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART AND VACATED IN PART
**RELEASED AND JOURNALIZED:** February 19, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-695299-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Hannah L. Baker and Grant Morgan, Assistant Prosecuting Attorneys, *for appellee*.

Scott J. Friedman, *for appellant*.

MICHELLE J. SHEEHAN, A.J.:

{¶ 1} Defendant-appellant Christopher Gilmore ("Gilmore") appeals from his convictions for two counts of having weapons while under disability and one

count of improperly handling firearms in a motor vehicle. On appeal, Gilmore challenges (1) the trial court's findings of guilt, alleging that his convictions are against the manifest weight of the evidence, and (2) the trial court's imposition of a no-contact order in conjunction with the prison sentences imposed for the same offenses. Upon a thorough review of the record and applicable law, we overrule Gilmore's first assignment of error, finding that his convictions are not against the manifest weight of the evidence. His second assignment of error is sustained, and the no-contact order is vacated because the trial court was precluded from issuing a no-contact order for an offense in which a term of prison has been imposed. The remainder of Gilmore's convictions and sentences are affirmed.

## I. Background Overview

### A. Relevant facts

{¶ 2} On December 14, 2023, Sophia Crute ("Crute") was working at Nela Florist at the corner of Helmsdale and Noble Road. Crute testified that "around lunch time," she went out to get lunch for herself and her coworkers. When she got into her vehicle, she looked to her left and saw Gilmore in his vehicle, a Kia Forte, facing the opposite direction. Crute stated that she had been in a relationship with Gilmore for approximately four years and they have a son together. They broke up in April 2022. Crute stated that she recognized his vehicle because it was the vehicle he had throughout their relationship.

{¶ 3} Crute testified that Gilmore began speaking to her. When she rolled down her window to hear what he was saying, Gilmore told her, "I'm going to kill

you about my son." Crute stated that this was quite normal for him to do. She further testified that she did not feel threatened because he had made this threat before.

{¶ 4} When the exchange ended, Gilmore exited the parking lot and turned onto Noble Road. Crute followed in the same direction, explaining that the store she was getting lunch from was in the same direction. Crute admitted that she initially told police that Gilmore had followed her. Crute stated that she saw Gilmore turn onto a street, a street or two from the store. She admitted that she drove past her intended destination to follow Gilmore and drove onto the same street. When she pulled to the side of Gilmore's vehicle, he immediately pulled out a gun. Upon seeing the gun, she immediately pulled away.

{¶ 5} Crute testified that Gilmore followed her so she stopped her vehicle, rolled down her passenger window, and yelled, "What is wrong with you?" Gilmore exited his vehicle and pointed the gun at her. Crute testified that upon seeing the gun, she pulled away and Gilmore followed her for several blocks.

{¶ 6} When Crute spoke to police later that day, she told them about Gilmore pointing the gun at her from his car but admitted on cross-examination that in her written statement, she did not mention that Gilmore got out of his vehicle and pointed a gun at her a second time.

{¶ 7} When she got to the store to get her food, Crute stated that she called the police and advised them that she was being chased by the father of her baby who was armed with a gun. Crute admitted that during this call, she never told police

that she approached Gilmore's vehicle prior to him pulling out his firearm. Crute testified that she also called Gilmore's mother, Julia Few ("Few"), to tell her that her son had just chased her with a gun and that she had called the police.

{¶ 8} Officer Ryan Warton ("Officer Warton") of the Cleveland Heights Police Department responded to Nela Florist where he spoke with Crute. Officer Warton stated that Crute described the altercation to him. He testified that Crute told him that when she came to a complete stop on Elbon Road, Gilmore exited his vehicle, approached her, and brandished a black firearm at her.

{¶ 9} Officer Warton testified that Crute provided him with a description of Gilmore's vehicle. The vehicle was subsequently located in the parking lot of an apartment complex located at the corner of Elbon and Noble. Crute was taken to the vehicle's location and positively identified it as the vehicle Gilmore had been driving.

{¶ 10} Few was identified as the registered owner of the vehicle. She arrived on scene and advised Officer Warton that she was Gilmore's mother and consented to a search of the vehicle. A loaded black firearm was discovered in the front driver compartment of the vehicle. Officer Warton testified that Few told him that the firearm was not hers "but she did see it in her residence a time or two."

{¶ 11} At trial, Few testified that she was the only person that drove the vehicle that day. Few testified that she and Gilmore were in Detroit, Michigan earlier that day and that they had left for Detroit at about 1:00 p.m. or 2:00 p.m. However, Few admitted she did not tell police that she and Gilmore had been in Detroit earlier

that day, even though she was aware that they were conducting a criminal investigation. She testified that at that moment, she "was just trying to get my car so I could leave."

**B. Indictment**

{¶ 12} In September 2024, the Cuyahoga County Grand Jury issued a multi-count indictment charging Gilmore with the following offenses:

1. Having weapons while under disability, in violation of R.C. 2923.13(A)(2), a felony of the third degree.

2. Having weapons while under disability, in violation of R.C. 2923.13(A)(3), a felony of the third degree.

3. Improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B), a felony of the fourth degree.

4. Aggravated menacing, in violation of R.C. 2903.21(A), a misdemeanor of the first degree.

5. Domestic violence, in violation of R.C. 2919.25(C), a misdemeanor of the fourth degree.

**C. Trial**

{¶ 13} A bench trial was held beginning April 16, 2025. Prior to trial, the parties stipulated that the firearm found in the Kia Forte was operable. The parties further stipulated to Gilmore's prior offenses as listed in Counts 1 and 2 of the indictment.

{¶ 14} At the conclusion of the trial, the trial court issued a verdict finding Gilmore guilty of two counts of having weapons while under disability, as listed in Counts 1 and 2 of the indictment, and guilty of one count of improperly handling

firearms in a motor vehicle, as listed in Count 3 of the indictment. The trial court found Gilmore not guilty of aggravated menacing and domestic violence, as listed in Counts 4 and 5 of the indictment.

### D. Sentencing

{¶ 15} Sentencing was held on June 13, 2025. The trial court sentenced Gilmore to a prison term of 12 months on Counts 1, 2, and 3, run concurrently to one another. The court also issued a no-contact order with the victim in this case as part of the sentence.

### E. Appeal

{¶ 16} Gilmore filed a timely notice of appeal from the trial court's sentencing entry. He presents two assignments of error for our review:

> 1. [Gilmore's] convictions were against the manifest weight of the evidence, in derogation of [Gilmore's] right to due process under the Fifth and Fourteenth Amendments to the United States Constitution.
>
> 2. The trial court erred when it imposed both a prison term and a no-contact order.

## II. Law and Analysis

### First Assigned Error for Review – Manifest Weight

{¶ 17} In his first assigned error for review, Gilmore argues that his convictions for having weapons while under disability and improperly handling firearms in a motor vehicle are against the manifest weight of the evidence. Upon a thorough review of the record, we determine that Gilmore's convictions are not

against the manifest weight of the evidence and overrule his first assignment of error.

## A. Standard of Review

{¶ 18} A challenge alleging that convictions are against the manifest "'[w]eight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief."'" *State v. Hughes-Davis,* 2025-Ohio-3151, ¶ 24 (8th Dist.), quoting *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). The Ohio Supreme Court has reminded us that when conducting a manifest-weight review, we "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.,* 2023-Ohio-4703, ¶ 14, citing *Eastley* at ¶ 20. As such, a manifest-weight-of-the-evidence challenge will be sustained ""only in the exceptional case in which the evidence weighs heavily against the conviction."'" *State v. Dodson,* 2025-Ohio-1733, ¶ 12 (8th Dist.), quoting *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).

## B. Analysis

{¶ 19} R.C. 2923.13(A), having weapons while under disability, provides, in relevant part, that

[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if . . .

. . .

(2) [t]he person is under indictment for or has been convicted of a felony offense of violence.  [or]

(3) . . ."any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse . . . ."

{¶ 20} R.C. 2923.16(B), improperly handling firearms in a motor vehicle, provides that "[n]o person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle."

{¶ 21} Gilmore stipulated to his prior convictions prior to trial.  He also stipulated that the firearm found in the Kia Forte was operable.  As such, the pertinent questions before the trial court was whether Gilmore knowingly possessed the firearm in question and whether he knowingly transported it or had it loaded while in a vehicle.

{¶ 22} Gilmore alleges that the case against him "rested primarily on the testimony of an alleged victim who lacked credibility."  With respect to a witness's credibility, when conducting a review under a manifest-weight challenge, we are mindful of the presumption in favor of the finder of fact and "'[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Parma Hts. v. Brett,* 2025-Ohio-

4, ¶ 21 (8th Dist.), quoting *In re Z.C.,* 2023-Ohio-4703*,* at ¶ 14. The underlying rationale of giving deference to the findings of the finder of fact is that "the finder of fact is in the 'best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in determining the credibility of a witness and his or her testimony.'" *State v. Jones,* 2025-Ohio-2866, ¶ 47 (8th Dist.), quoting *State v. Sheline,* 2019-Ohio-528, ¶ 100 (8th Dist.).

{¶ 23} Here, Gilmore alleges that Crute was not credible because when she initially spoke to officers, she told them that Gilmore initially followed her out of Nela Florist's parking lot. However, at trial, Crute admitted that she had lied to the police and that she had followed him because she wanted to talk to Gilmore about how he could reestablish a relationship with his child. Crute did not dispute that her initial presentation of this fact to police was untruthful.

{¶ 24} Gilmore also points out that Crute provided a written statement to police after the incident but failed to include in the statement that Gilmore had exited the vehicle and pointed a gun at her. Crute testified that she did tell the police that day, even though it was not in the written statement. And Officer Warton corroborated Crute on this point, testifying, "So according to our victim[,] they came to a complete stop on Elbon. The suspect, Mr. Gilmore, allegedly got out of his vehicle, approached Ms. Crute and brandished a firearm, black in color, at her."

{¶ 25} On the other hand, the State directs us to the credibility of Gilmore's mother, Few. The State notes that Few testified that she and Gilmore were in Detroit earlier on the day of the offense. But when speaking to officers, she never told

officers that Gilmore had been in Detroit earlier that day. Few also failed to tell officers that the firearm found in the car that day had been put there by her. Rather, she just told officers that day it was not hers. When asked why she failed to tell officers that she was the one who put the firearm in the car, knowing they were involved in a criminal investigation, she responded, "I didn't think about it at the time, no."

{¶ 26} It has been well-recognized that "inconsistencies or contradictions in a witness's testimony do not entitle a defendant to a reversal of a trial." *State v. Rentas,* 2024-Ohio-732, ¶ 16 (8th Dist.), citing *State v. Solomon,* 2021-Ohio-940, ¶ 62 (8th Dist.). "Nor does the presence of conflicting testimony render a verdict against the manifest weight of the evidence." *State v. Clark,* 2025-Ohio-5342, ¶ 52 (8th Dist.), citing *State v. Pace,* 2025-Ohio-2874, ¶ 62 (10th Dist.). As a result, "[t]he trier of fact is free to accept or reject any or all testimony of any witness." *Parma v. Singh,* 2018-Ohio-5235, ¶ 21 (8th Dist.), citing *State v. Smith,* 2010-Ohio-4006, ¶ 16 (8th Dist.).

{¶ 27} Here, the trial judge, acting as the finder of fact, was in the best position to judge the credibility of witnesses presented at trial, and how these inconsistent statements affected their credibility — particularly the credibility of Crute and Few. In doing so, the trial court found Gilmore not guilty of the domestic-violence and aggravated-menacing charges in the indictment. The court did find him guilty of having weapons while under disability and improperly handling

firearms in a motor vehicle. We cannot say, and Gilmore has failed to demonstrate, that the trial court clearly lost its way in finding him guilty of these offenses.

{¶ 28} For these reasons, Gilmore's convictions for having weapons while under disability and improperly handling firearms in a motor vehicle are not against the manifest weight of the evidence. Accordingly, Gilmore's first assignment of error is overruled.

**Second Assigned Error for Review — No-contact Order**

{¶ 29} In his second assigned error for review, Gilmore contends that the trial court erred when it imposed both a prison term and a no-contact order with the victim as part of its sentence. The State concedes the error. For the following reasons, Gilmore's second assignment of error is sustained.

{¶ 30} The Ohio Supreme Court has made it clear that "split sentences" are generally prohibited in Ohio. The "'[c]urrent felony sentencing statutes, contained primarily in R.C. 2929.11 to 2929.19, require trial courts to impose *either* a prison term or community control sanctions on each count.'" *State v. Anderson,* 2015-Ohio-2089, ¶ 23, quoting *State v. Berry,* 2012-Ohio-4660, ¶ 21 (3d Dist.). As such, "when a prison term and community control are possible sentences for a particular felony offense, absent an express exception, the court must impose either a prison term or a community-control sanction or sanctions." *Id.* at ¶ 31.

{¶ 31} Here, Gilmore was convicted of three felony offenses. The trial court imposed a prison term on each offense, as well as a no-contact order. "Ohio courts have recognized that a no-contact order is a community control sanction." *Id.* at

¶ 17, citing *State v. Snyder*, 2013-Ohio-2046, ¶ 55 (3d Dist.); *State v. Schwartz*, 2013-Ohio-3958, ¶ 9-12 (6th Dist.); *State v. Marcum*, 2012-Ohio-572, ¶ 11 (4th Dist.); *State v. Simms*, 2009-Ohio-5440, ¶ 25 (12th Dist.); *State v. Loveless*, 2002-Ohio-5380, ¶ 18 (2d Dist.). Because the trial court was precluded from imposing a prison term and community-control sanction for the same offense, the trial court erred when it issued a no-contact order along with a prison term as part of its sentence. *See id*. at ¶ 32.

{¶ 32} Accordingly, we sustain Gilmore's second assignment of error and vacate the no-contact order imposed by the trial court.

### III. Conclusion

{¶ 33} Following a thorough review of the record and applicable law, we find that Gilmore's convictions are not against the manifest weight of the evidence and overrule his first assignment of error. We sustain Gilmore's second assignment of error and vacate the no-contact order imposed by the trial court. His convictions and remaining sentences are affirmed.

{¶ 34} Judgment affirmed in part and vacated in part.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, ADMINISTRATIVE JUDGE

SEAN C. GALLAGHER, J., and
DEENA R. CALABRESE, J., CONCUR