[Cite as *State v. Phillips*, 2026-Ohio-2412.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

      Plaintiff- Appellee,              :

                                    No. 115667

v.                                      :

LETRELL PHILLIPS,                       :

      Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** June 25, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-25-700777-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Benjamin Fuchs, Assistant Prosecuting Attorney, *for appellee.*

Mary Catherine Corrigan, *for appellant.*

MICHELLE J. SHEEHAN, A.J.:

{¶ 1} Defendant-appellant Letrell Phillips ("Phillips") appeals from the judgment of his convictions for aggravated robbery, robbery, kidnapping, carrying a concealed weapon, improperly handling firearms in a motor vehicle, obstructing

official business, and having weapons while under disability. Phillips challenges (1) the findings of guilt, alleging that his convictions are against the manifest weight of the evidence; (2) the sufficiency of the evidence supporting his convictions; (3) the effectiveness of his trial counsel; and (4) the accuracy of the trial court's sentencing entry.

{¶ 2} After a thorough review of the record and applicable law, we overrule each assignment of error, affirm his convictions, and remand to the trial court to issue a nunc pro tunc entry with respect to its sentencing entry.

## I. Background Overview

### A. Relevant facts

{¶ 3} On the morning of March 30, 2025, Tonay Thomas ("Thomas") went to church with her friend, Felicia Pickett ("Pickett"). They drove together to Cleveland Covenant Community Church in Thomas's Honda Odyssey minivan. Thomas testified that while she was in church, she received a text from Phillips stating that he knew what Thomas had done and that she was "going to pay him back."

{¶ 4} After church ended, Thomas and Pickett were traveling down Buckeye Road in Thomas's minivan when they noticed a white Camry driving towards them. Thomas recognized the Camry as belonging to Phillips's cousin. Thomas testified that Phillips's cousin was driving the vehicle while Phillips was in the front passenger seat. Thomas testified that the Camry was driving towards them at a fast rate of speed so she accelerated her van to get away from Phillips and his cousin.

**{¶ 5}** Thomas stated that she eventually stopped at a stop sign. She got out of her van, intending to ask Phillips why he was following them. Phillips got out of the Camry, and the two engaged in a heated conversation. Phillips accused Thomas of "messing" up his car and that she needed to pay him back. At some point during the argument, Thomas testified that Phillips removed a silver handgun from his pocket and told Thomas, "You all need to pay me back for my s***, or whatever." Pickett also saw the firearm that she also described as being silver in color.

**{¶ 6}** Thomas stated that she was scared and panicked when she saw the gun. She told Phillips that she would pay for the damage to his car with money that she had in the bank. Phillips then told Thomas, "[Y]ou all about to take me to the bank." The three got into Thomas's car and headed toward the Citizens Bank on Lee Road. Phillips sat in the back seat while Thomas drove. Thomas testified that she was still panicking so she pulled over so Pickett could drive the rest of the way to the bank.

**{¶ 7}** On the way to the bank, Phillips told Thomas that if she did not get him the money, "something gonna happen." Thomas testified that she believed this to be a threat. Thomas texted her friend Jaquana Connel ("Connel") and told Connel that Phillips was threatening her, told Connel to call the police, and asked her to meet her at the bank.

**{¶ 8}** When Thomas, Pickett, and Phillips arrived at the bank, Pickett parked the van in the parking lot where they met Connel. Phillips remained in the backseat of the van. Thomas, Pickett, and Connel walked over to the drive-thru ATM machine where Thomas attempted to withdraw money but was unable to do so since the bank

was closed. They decided they would tell Phillips that they would have to go to Thomas's children's grandmother's house on Rosewood Avenue to get the money. Thomas testified that they chose this location because it was a safe place for the police to meet them.

{¶ 9} They each got back into their vehicles and drove to the Rosewood house. Connel followed them in her car. When they arrived at the Rosewood residence, Thomas exited her van and walked over to Connel's vehicle. Thomas's four children came out of the house at that time and jumped into her van where Phillips was sitting in the front passenger seat. Soon after the police arrived.

{¶ 10} Officer Trevor Smith ("Officer Smith") of the Cleveland Division of Police testified that he and his partner received information that a female was being held at gunpoint and being forced to withdraw money from an ATM machine. Officer Smith testified that when they arrived in the Rosewood area, he saw Thomas's van. He observed Phillips in the passenger compartment making "furtive movements." Officer Smith then gave a loud verbal command to Phillips, ordering him to show his hands. Phillips then fled into the backyard of a residence, and Officer Smith gave chase. During the pursuit, Officer Smith testified that he noticed Phillips make a movement with both of his hands to the right-hand side of his waistband and observed what he believed to be the handle of a firearm that Phillips threw to the ground. Phillips was caught and taken into custody. The silver handgun was located to the left of where Phillips was standing.

## B. Indictment

{¶ 11}Phillips was charged by the Cuyahoga County Grand Jury in a 13-count indictment. The indictment charged Phillips with the following offenses:

1. Aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1), with notice of prior conviction and repeat violent offender specifications; one-year, 18-month, three-year, and 54-month firearm specifications;

2. Robbery, a felony of the second degree, in violation of R.C. 2911.02(A)(1), with notice of prior conviction and repeat violent offender specifications; one-year, 18-month, three-year, and 54-month firearm specifications;

3. Kidnapping, a felony of the first degree, in violation of R.C. 2905.01(B)(2), with notice of prior conviction and repeat violent offender specifications; one-year, 18-month, three-year, and 54-month firearm specifications;

4. Aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1), with notice of prior conviction and repeat violent offender specifications; one-year, 18-month, three-year, and 54-month firearm specifications;

5. Aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1), with notice of prior conviction and repeat violent offender specifications; one-year, 18-month, three-year, and 54-month firearm specifications;

6. Kidnapping, a felony of the first degree, in violation of R.C. 2905.01(B)(2), with notice of prior conviction and repeat violent offender specifications; one-year, 18-month, three-year, and 54-month firearm specifications;

7. Having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(2);

8. Having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(3);

9. Carrying a concealed weapon, a felony of the fourth degree, in violation of R.C. 2923.12(A)(1);

10. Improperly handling firearms in a motor vehicle, a felony of the fourth degree, in violation of R.C. 2923.16(B);

11. Obstructing official business, a felony of the fifth degree, in violation of R.C. 2921.31(A), with a one-year firearm specification;

12. Tampering with evidence, a felony of the third degree, in violation of R.C. 2921.12(A)(1), with a one-year firearm specification; and

13. Receiving stolen property, a felony of the fourth degree, in violation of R.C. 2913.51(A).

## C. Trial and Verdict

{¶ 12} A jury trial began on September 17, 2025. Prior to trial, Phillips waived his right to a trial by jury with respect to Counts 7 and 8 (having weapons while under disability counts) and the notice-of-prior conviction, repeat-violent offender, and 18- and 54-month firearm specifications. Counts 9, 10, 11, 12, and 13 in the indictment were respectively renumbered 7, 8, 9, 10, and 11. The having weapons while under disability counts were referred to as bench trial Counts 1 and 2.

{¶ 13} At the conclusion of the trial, the jury returned a verdict finding Phillips guilty of the following offenses:

Count 1: Aggravated robbery, a felony of the first degree;

Count 2: Robbery, a felony of the second degree;

Counts 3 and 6: kidnapping, felonies of the first degree;

Count 7 (formerly Count 9): carrying a concealed weapon, a felony of the fourth degree;

Count 8 (formerly Count 10): improperly handling firearms in a motor vehicle, a felony of the fourth degree;

Count 9 (formerly Count 11): obstructing official business.

{¶ 14} The court found Phillips guilty as to bench trial Counts 1 and 2, having weapons while under disability, felonies of the third degree (originally charged as Counts 7 and 8 in the indictment.) The court also found him guilty of the 18- and 54-month firearm specifications. The court further found Phillips to be a repeat violent offender, pursuant to the repeat-violent-offender specifications set forth in Counts 1, 2, 3, and 6.

{¶ 15} The court dismissed Count 11 (formerly Count 13), receiving stolen property, pursuant to Phillips's Crim.R. 29 motion. Phillips was found not guilty of the remaining counts.

**D. Sentencing**

{¶ 16} Sentencing was held on September 24, 2025. For the purposes of sentencing, the trial court merged Count 2 into Count 1 and imposed a minimum prison term of four years and a maximum prison term of six years on Count 1, aggravated robbery, to run prior to and consecutive to the mandatory 54-month prison term on the firearm specification.

{¶ 17} The court imposed a four-year prison term on Count 3, kidnapping.

{¶ 18} The court imposed a four-year prison term on Count 6, kidnapping and 54 months on the attached firearm specification.[1]

{¶ 19} The court imposed a 12-month prison term on Count 7 (formerly Count 9), carrying a concealed weapon.

{¶ 20} The court imposed a 12-month prison term on Count 8 (formerly Count 10), improperly handling a firearm in a motor vehicle.

{¶ 21} The court imposed a 12-month prison term on Count 9 (formerly Count 11), obstructing official business.

{¶ 22} With respect to the offenses of having weapons while under disability, which had been renumbered as bench trial Counts 1 and 2, the court merged these counts and imposed a sentence of 12-months on bench trial Count 1.

{¶ 23} The trial court ordered Counts 1, 3, 7, 8, and 9 to be served concurrently to one another, but consecutively to Count 6, kidnapping, and the sentence imposed on the having-weapons-while-under-disability offense (bench trial Count 1) for an aggregate sentence of 18-20 years in prison.[2]

**E. Appeal**

{¶ 24} Phillips appeals his convictions, presenting four assignments of error for our review:

---

[1] The trial court's sentencing entry incorrectly states that 54 years was imposed on the firearm specification on Count 6.

[2] The court also ordered this sentence run consecutively to the sentence imposed for a community-control-sanctions violation imposed in a separate case.

1. The convictions are against the manifest weight of the evidence as to indictment count(s) one (1), two (2), three (3), six (6), and nine (9).

2. The evidence is insufficient to sustain a finding of guilty as to indictment counts one (1), two (2), three (3), six (6), and nine (9).

3. Trial counsel was ineffective for failing to request a mistrial after Ms. Thomas informed the jury of [Phillips's] prior incarcerations.

4. The sentencing journal entry is inaccurate and does not give a sentence for indictment count(s) seven (7) and eight (8).

## II. Law and Analysis

{¶ 25} In his first two assignments of error, Phillips argues that his convictions are against the manifest weight of the evidence presented at trial and insufficient to support his convictions for aggravated robbery, robbery, kidnapping, carrying a concealed weapon, and the attendant firearm specifications. For ease of discussion, we will address these assignments of error out of order.

### Second Assigned Error for Review — Sufficiency

{¶ 26} In his second assigned error for review, Phillips argues that the evidence presented at trial is insufficient evidence to support his convictions. After a thorough review of the record, we find that the evidence was sufficient to support the convictions for aggravated robbery, robbery, kidnapping, carrying concealed weapons, and the firearm specifications.[3]

---

[3] Phillips's first and second assignments of error state that he is challenging his convictions for Counts 1, 2, 3, 6, and 9 in the indictment. With respect to his carrying-concealed-weapons conviction, it was indicted as Count 9 in the original indictment and later renumbered as Count 7. While his assignment of error states that he is challenging Count 9, the body of his argument makes clear that he is challenging his conviction for

### A. Standard of Review

{¶ 27} "The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial." *State v. Wilborn,* 2024-Ohio-5003, ¶ 37 (8th Dist.), citing *State v. Cottingham,* 2020-Ohio-4220, ¶ 32 (8th Dist.). In reviewing a challenge based on sufficiency, we must "'determine whether [such] evidence, if believed, would convince the average [mind] of the defendant's guilt beyond a reasonable doubt.'" *State v. Webb,* 2025-Ohio-456, ¶ 9 (8th Dist.), quoting *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. A sufficiency review "is not a factual determination, but a question of law." *State v. Jackson,* 2025-Ohio-109, ¶ 25 (8th Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997).

{¶ 28} When reviewing the evidence, we must keep in mind that "[p]roof of guilt may be supported 'by circumstantial evidence, real evidence, and direct evidence, or any combination of all three, and all three have equal probative value.'" *Wilborn* at ¶ 38, quoting *State v. Radano,* 2017-Ohio-1034, ¶ 35 (8th Dist.). And although each type of evidence has their obvious differences, "those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries

---

carrying concealed weapons. Phillips does not challenge his conviction for obstructing official business that had been renumbered Count 9 (formerly Count 11.)

the same weight as direct evidence." *Id.,* citing *State v. Cassano,* 2012-Ohio-4047, ¶ 13 (8th Dist.).  Our review of the evidence is not to determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390.

### B. Analysis

#### 1. Aggravated Robbery and Robbery

{¶ 29} Phillips was convicted of aggravated robbery, in violation of R.C. 2911.01(A)(1).  R.C. 2911.01 provides, in relevant part:

> (A) No person, *in attempting or committing a theft offense,* as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control and *either display the weapon, brandish it, indicate that the offender possesses it, or use it*[.]

(Emphasis added.)

{¶ 30} He was also convicted of robbery, in violation of R.C. 2911.02(A)(1). R.C. 2911.02 provides, in relevant part:

> (A) No person, *in attempting or committing a theft offense* or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control[.]

(Emphasis added.)

{¶ 31}  Both offenses require a finding that the offender either committed or attempted to commit a theft offense.  Phillips claims that the evidence presented at trial was insufficient to demonstrate that Phillips had committed or attempted to

commit a theft offense. He also claims that the evidence fails to demonstrate that he brandished the firearm to support his aggravated-robbery conviction, as well as the attendant firearm specifications.

{¶ 32} R.C. 2913.01(K)(1) defines a "theft offense," in relevant part, as "[a] violation of section . . . 2913.02 [theft] . . . of the Revised Code[.]" R.C. 2913.02(A) provides:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent;
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> (3) By deception;
>
> (4) By threat;
>
> (5) By intimidation.

{¶ 33} Here, the evidence was sufficient to demonstrate that Phillips attempted to deprive Thomas of her property (money) by threat and/or intimidation utilizing a firearm. Thomas testified that Phillips demanded she pay him for damage he alleged she had done to his car. While arguing, Thomas stated that Phillips pulled a firearm from his pocket and stated, "You all need to pay me back for my s***, or whatever." She testified that she panicked when she saw the firearm and agreed to get Phillips the money from the bank. Thomas asserted that the only reason she agreed to pay Phillips was she was scared because Phillips had a gun. While in her

car on the way to the bank, Thomas testified that Phillips held the firearm in his hand. He continued to threaten her saying, "[I]f I don't get the money something gonna happen[.]" Thomas testified that she viewed this as a threat to herself and Pickett.

{¶ 34} Pickett also testified that she saw Phillips holding the firearm while arguing with Thomas. She stated that while holding the firearm, Phillips told Thomas to take him to the bank: "You all about to pay for this." Pickett testified that she and Thomas were both scared and that she did what Phillips told her to do "[b]ecause he had a gun."

{¶ 35} This evidence is sufficient to demonstrate that Phillips attempted to obtain Thomas's money by threat and/or intimidation, while utilizing a firearm. As such, this evidence was sufficient that a reasonable jury could determine that Phillips was attempting to commit a theft offense against Thomas, in support of his convictions for aggravated robbery and robbery.

{¶ 36} Further, the evidence presented was sufficient for the jury to determine that Phillips had a firearm under his control at the time of his offense, and either displayed, brandished, used, or indicated that he had a firearm to support Phillips's aggravated-robbery conviction and the attendant firearm specifications.

### 2. Kidnapping

{¶ 37} Phillips was convicted of two counts of kidnapping, in violation of R.C. 2905.01(B)(2). R.C. 2905.01(B) provides:

No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:

. . .

(2) Restrain another of the other person's liberty.

{¶ 38} Phillips claims that the evidence fails to demonstrate that Thomas's and Pickett's liberty was restrained.

{¶ 39} As discussed above, Thomas and Pickett both testified that they only agreed to take Phillips to the bank because he had a firearm, which he had taken out of his pocket and was holding in his hand as he insisted they take him to the bank. They both testified that on the way to the bank, Phillips threatened them. And they both testified that they were scared once the firearm was displayed by Phillips.

{¶ 40} A reasonable jury could determine that Thomas's and Pickett's liberty was restrained because of the threats and demands made by Phillips while displaying a firearm. As such, the evidence presented at trial was sufficient to support Phillips's kidnapping convictions.

### 3. Carrying a Concealed Weapon

{¶ 41} Phillips was convicted of carrying a concealed weapon, in violation of R.C. 2923.12(A)(1), which provides:

No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following:

(1)     A deadly weapon other than a handgun[.]

{¶ 42} Phillips asserts that the evidence presented at trial was insufficient to demonstrate that Phillips's firearm was concealed.

{¶ 43} It has been well recognized that "[a] weapon need not be completely invisible to be concealed for the purposes of R.C. 2923.12." *State v. Willis,* 2008-Ohio-6156, ¶ 23 (8th Dist.), citing *State v. Almalik,* 41 Ohio App.3d 101 (8th Dist. 1987). We have held that "[a] partially concealed weapon is 'concealed' with the meaning of R.C. 2923.12." *Almalik* at 105. "'Rather, it is sufficient to support a conviction of carrying a concealed weapon to prove only that ordinary observation would give no notice of its presence. . . . There must be an evidentiary basis established by the proof upon which the jury could find that the weapon was concealed.'" *Willis* at ¶ 23*,* quoting *State v. Coker,* 15 Ohio App.3d 97 (9th Dist. 1984); *State v. Pettit,* 20 Ohio App.2d 170, 173-174 (4th Dist. 1969) (noting that "a weapon is concealed if it is so situated as not to be discernible by ordinary observation by those near enough to see it if it were not concealed, who would come into contact with the possessor in the usual associations of life; but that absolute invisibility is not required").

{¶ 44} In *State v. Gilmore,* 1991 Ohio App. LEXIS 5372 (8th Dist. Nov. 7, 1991), this court upheld a carrying-concealed-weapons conviction where the evidence demonstrated that the firearm was in defendant's waistband. The court stated that "the weapon could be considered 'partially concealed' as it was 'shoved into' defendant's waistband. Whether or not it was carried so that ordinary

observation would give notice of its presence was a question of fact to be resolved by the trial court." *Id.* at * 7.

{¶ 45} In this case, Thomas testified that Phillips had "a handgun in his pocket. He had took it out. And he was like, you all need to pay me back for my s***, or whatever." Officer Smith also testified that while chasing Phillips, he observed Phillips move both hands to the right side of his waistband and that is when he saw what he believed to be at the time a handle of a firearm. Officer Smith testified that Phillips threw the firearm onto the ground.

{¶ 46} The evidence presented at trial demonstrates that the firearm was being kept in either Phillips's pocket or his waistband. The firearm was revealed when he pulled it out from his pocket when arguing with Thomas or when he removed it from his waistband when he threw it to the ground while being pursued by Officer Smith. Whether carrying a firearm in his pocket and/or waistband was done in a way that ordinary observation would not give notice of its presence is a question of fact that could be resolved by the jury. *See Gilmore* at *7. Thus, the evidence present at trial was sufficient such that a reasonable finder of fact could determine that the firearm was concealed prior to Phillips pulling it out in front of Thomas or Officer Smith.

{¶ 47} For the foregoing reasons, we find that the evidence was sufficient to support Phillips's convictions and the firearm specifications. Accordingly, Phillips's second assignment of error is overruled.

**First Assigned Error for Review – Manifest Weight**

{¶ 48} In his first assigned error for review, Phillips alleges that his convictions are against the manifest weight of the evidence. We disagree.

**A. Standard of Review**

{¶ 49} In contrast to a sufficiency challenge, a challenge with respect to the weight of the evidence concerns "'"the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief."'" *State v. Hughes-Davis,* 2025-Ohio-3151, ¶ 24 (8th Dist.), quoting *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 12, quoting *Thompkins,* 78 Ohio St.3d at 387. The Ohio Supreme Court has stated that when conducting a manifest weight review, the reviewing court "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.,* 2023-Ohio-4703, ¶ 14, citing *Eastley* at ¶ 20. As such, a manifest-weight challenge will be sustained "'"only in the exceptional case in which the evidence weighs heavily against the conviction."'" *State v. Dodson,* 2025-Ohio-1733, ¶ 12 (8th Dist.), quoting *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**B. Analysis**

{¶ 50} Phillips first challenges Thomas's credibility, claiming that Thomas admitted that later that day, after the offenses had occurred, she had sent Phillips texts apologizing and telling him that "I wanna make it up to you."

{¶ 51} When conducting a review under a manifest-weight challenge, we are mindful of the presumption in favor of the finder of fact and, "'[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Parma Hts. v. Brett,* 2025-Ohio-4, ¶ 21 (8th Dist.), quoting *Z.C.* at ¶ 14. The underlying rationale of giving deference to the finder of fact is that "the finder of fact is in the 'best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in determining the credibility of a witness and his or her testimony.'" *State v. Jones,* 2025-Ohio-2866, ¶ 47 (8th Dist.), quoting *State v. Sheline,* 2019-Ohio-528, ¶ 100 (8th Dist.).

{¶ 52} Here, the jury was presented with text messages Thomas had sent Phillips later that day. They were able to hear her explanations for sending the messages and to weigh the messages against those explanations. Phillips also had the opportunity to cross-examine Thomas on those messages and bring any inconsistencies or contradictions to the jury.

{¶ 53} It is well established that "'inconsistencies or contradictions in a witness's testimony do not entitle a defendant to a reversal of a trial.'" *State v.*

*Gilmore,* 2026-Ohio-577, ¶ 26 (8th Dist.), quoting *State v. Rentas,* 2024-Ohio-732, ¶ 16 (8th Dist.), citing *State v. Solomon,* 2021-Ohio-940, ¶ 62 (8th Dist.). "Nor does the presence of conflicting testimony render a verdict against the manifest weight of the evidence." *State v. Clark,* 2025-Ohio-5342, ¶ 52 (8th Dist.), citing *State v. Pace,* 2025-Ohio-2874, ¶ 62 (10th Dist.). As such, "[t]he trier of fact is free to accept or reject any or all testimony of any witness." *Parma v. Singh,* 2018-Ohio-5235, ¶ 21 (8th Dist.), citing *State v. Smith,* 2010-Ohio-4006, ¶ 16 (8th Dist.).

{¶ 54} Here, the jury was in the best position to judge Thomas's testimony, her testimony concerning the crimes, and the text messages she sent to Phillips later that day. In doing so, they were free to "accept or reject any or all testimony of any witness." *Id.,* citing *Smith* at ¶ 16.

{¶ 55} Phillips also claims that the evidence presented at trial does not support his convictions. However, as discussed above, the evidence presented at trial was sufficient to support Phillips's convictions. Phillips merely disagrees with the jury's interpretation of the evidence. The jury had the ability to weigh all the evidence and come to its conclusions. In doing so, the jury returned verdicts of guilty on some counts and not guilty as to other counts in the indictment. As a result, we cannot say that this is one of those extraordinary cases where the jury clearly lost its way.

{¶ 56} Accordingly, Phillips's first assignment of error is overruled.

**Third Assigned Error for Review — Ineffective Assistance of Counsel**

{¶ 57} In his third assigned error for review, Phillips claims that he was denied effective assistance of counsel because his trial counsel failed to request a mistrial after Thomas mentioned Phillips's prior incarceration while testifying. After a thorough review of the record, we find that defense counsel's decision not to request a mistrial did not violate Phillips's constitutional right to effective assistance of counsel.

**A. Standard of Review**

{¶ 58} "In order to substantiate a claim for ineffective assistance of counsel, a defendant must satisfy a two-prong test." *State v. Jefferson,* 2025-Ohio-2008, ¶ 14 (8th Dist.). "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client." *State v. Bradley*, 42 Ohio St.3d 136, 141 (1989). To establish this first prong, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 142, quoting *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). "[B]ecause of the difficulties inherent in making [such an] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Bradley* at 142, quoting *Strickland* at 689.

{¶ 59} "[Second], and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination

as to whether the defense was prejudiced by counsel's ineffectiveness." *Bradley* at 141-142. To establish that one has been "prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would be different." *Id.* at 143.

### B. Analysis

{¶ 60} Thomas testified that she used to "kick it" and "chill" with Phillips. While questioning Thomas about their relationship, the prosecutor asked Thomas when that relationship ended. Thomas responded: "When he went to jail." The trial court struck Thomas's answer and instructed the jury to disregard it. Phillips asserts that his attorney should have moved for a mistrial.

{¶ 61} We have said that "[a] mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred, unless the substantial rights of the accused or the prosecution are adversely affected, and this determination is made at the discretion of the trial court." *Cleveland v. Vega,* 2011-Ohio-2250, ¶ 21 (8th Dist.), citing *State v. Reynolds,* 49 Ohio App.3d 27, 33 (2d Dist. 1988). As such, a mistrial "is only necessary when a fair trial is no longer possible." *Id.,* citing *State v. Franklin,* 62 Ohio St.3d 118, 127 (1991).

{¶ 62} Following Thomas's statement, the trial court immediately struck her answer and advised the jury to disregard it. The decision whether to request a mistrial is a tactical choice that falls within the scope of trial strategy. *See State v. Seiber,* 56 Ohio St.3d 4, 12 (1990); *State v. Zuene,* 2011-Ohio-5170, ¶ 37 (10th

Dist.)(noting that "[t]he decision not to request a mistrial is one of trial strategy best left to trial counsel"). Defense counsel's decision to forgo requesting a mistrial and to instead defer to the trial court's curative instruction was a strategic choice. We have recognized that "[i]n a similar context, the Ohio Supreme Court found defense counsel's decision to secure a curative instruction from the court as to prior bad acts testimony rather than request a mistrial to be a tactical decision." *State v. Cunningham,* 2018-Ohio-4022, ¶ 25 (8th Dist.), citing *State v. Nields,* 93 Ohio St.3d 6, 33 (2001).

{¶ 63} Furthermore, it is well-settled that a "jury is presumed to follow the trial court's instructions." *State v. McCay,* 2007-Ohio-4051, ¶ 30 (8th Dist.), citing *Pang v. Minch,* 53 Ohio St.3d 186 (1990). "This includes any curative instructions intended to remedy any errors or irregularities that occur during trial." *State v. Fluker,* 2026-Ohio-1278, ¶ 87 (8th Dist.), citing *State v. West,* 2003-Ohio-7067, ¶ 38 (8th Dist.), citing *State v. Zuern,* 32 Ohio St.3d 56, 61 (1987). Thus, we find that Thomas's statement concerning Phillips's prior incarceration was cured when the trial court struck her response and instructed the jury to disregard it.

{¶ 64} Defense counsel's decision not to request a mistrial did not fall below an objective standard of reasonableness but rather fell within the bounds of acceptable trial strategy. And even if defense counsel's performance had been unreasonable, Phillips has failed to demonstrate that he suffered prejudice as a result since any prejudice was cured when the trial court instructed the jury to disregard Thomas's comment.

{¶ 65} Accordingly, Phillips has failed to demonstrate that his trial counsel was ineffective and his third assignment of error is overruled.

**Fourth Assigned Error for Review — Sentencing Journal Entry**

{¶ 66} In his fourth assigned error for review, Phillips alleges that the trial court's sentencing entry failed to impose an "independent sentence" on the convictions for having weapons while under disability. Phillips recognizes that the sentencing entry did note that Count 2 merged into Count 1 and a 12-month sentence was imposed, but he appears to argue that is unclear which count the 12-months sentence applied to, or whether that sentence was to run concurrently or consecutively to the remaining counts and that the aggregate sentence should not include the additional 12-month sentence imposed. After a thorough review of the transcript and sentencing entry, we affirm Phillips's sentence but remand the case with an order to the trial court to issue a nunc pro tunc entry to clarify the sentencing entry.

**A. Having-Weapons-While-Under-Disability Sentence**

{¶ 67} Prior to trial, Phillips waived his right to a jury trial with respect to the offenses of having weapons while under disability as set forth in Counts 7 and 8 of the indictment and chose to have those offenses tried to the bench. The trial court renumbered those offenses: "bench trial Count 1 and bench trial Count 2." The court found Phillips guilty of both counts.

{¶ 68} At sentencing, the trial court merged the having-weapons-while-under-disability counts and imposed a sentence of 12 months on bench trial Count

1. He also ordered "Counts 1, 6, and bench trial Count 1 [to] run consecutively with each other." The sentencing entry journalized the trial court's having-weapons-while-under-disability sentence as follows:

> Count(s) 2 merge into Count 1. State elects to proceed as to Count 1, F3: 12 month(s).

{¶ 69} The entry also noted that the following sentences would run consecutively to one another:

> Counts 1, 3, 7, 8 and 9 are concurrent with each other; consecutive to jury Count 6 and *court Count 1.*

(Emphasis added.)

{¶ 70} We recognize that in journalizing the sentence, the trial court did not refer to the sentence imposed on Count 1 as "bench trial Count 1" as it did on the record, leading to confusion since the entry appears to read as though Phillips was sentenced with respect to two different Count 1's (the aggravated-robbery offense as listed as Count 1 in the indictment and the offense of having weapons while under disability), rather than clarifying that the 12-month prison sentence was imposed on "bench trial Count 1." Further, with respect to consecutive sentences, the journal entry provides that "court Count 1" would be run consecutively, rather than referring to that count as "bench trial Count 1" as the court had renumbered it in open court.

{¶ 71} It is well settled that courts possess the inherent authority to correct errors in judgment entries so that the record speaks the truth. *State v. Lester,* 2011-Ohio-5204, ¶ 18. *See also* Crim.R. 36. "Errors subject to correction by the court include a clerical error, mistake, or omission that is mechanical in nature and

apparent on the record and does not involve a legal decision or judgment." *Id.* A nunc pro tunc order that adds substantive findings rather than the mere correction or a clerical or typographical error is improper. *In re Tyler C.,* 2008-Ohio-2207, ¶ 73 (6th Dist.). A nunc pro tunc order cannot be used to indicate what the court should have decided, but instead, "[i]ts proper use is limited to what the trial court *actually did decide.*" (Emphasis added.) *Sangster v. Dunn,* 1997 Ohio App. LEXIS 3693, *11-12 (8th Dist. Aug. 14, 1997).

{¶ 72} We find a nunc pro tunc order is necessary for the trial court to correct its sentencing entry and clarify that the 12-month prison sentence imposed on the having-weapons-while-under-disability offense was imposed on "bench trial Count 1" and that "bench trial Count 1" is ordered to run consecutively to jury Count 6 and the remaining counts of which Phillips was convicted.

## B. Count 6 – Firearm Specification

{¶ 73} Finally, neither party addressed the error in Count 6 of the trial court's sentencing entry with respect to the sentence imposed for the firearm specification on that count. As such, we bring it to the trial court's attention to review on remand.

{¶ 74} In open court, the trial court imposed a 54-month sentence on the attached firearm specification attached to Count 6, kidnapping. The court's sentencing entry, however, indicates the trial court imposed "*54 year(s)* mandatory prison on the firearm specification(s) . . . ." (Emphasis added.)

{¶ 75} On remand, we task the trial court to address this error and correct it in its nunc pro tunc entry. Accordingly, Phillips's fourth and final assignment of error is overruled and his sentences are affirmed, but the case is remanded for the reasons set forth above.

## III. Conclusion

{¶ 76} Following a thorough review of the record and applicable law, we overrule Phillips's four assigned errors for review. His convictions and sentences are affirmed. The case is remanded for further proceedings consistent with this opinion.

{¶ 77} Judgment affirmed, and case remanded.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, ADMINISTRATIVE JUDGE

ANITA LASTER MAYS, J., and
EILEEN A. GALLAGHER, J., CONCUR